E. GRADY JOLLY, Circuit Judge:
 

 In this appeal we address the question whether a bankruptcy court’s confirmation order which, beyond the statutory grant of the Code, expressly released a third-party guarantor, is to be given
 
 res judicata
 
 effect. In a previous bankruptcy action, the bankruptcy court confirmed a reorganization plan (the Plan) that released a guaranty executed by the appellant, Dr. Joseph Shoaf, in favor of the creditor, now plaintiff-appellee, Republic Supply Company (Republic). In the bankruptcy court, Republic neither objected to that provision of the Plan nor appealed its confirmation. Prior to confirmation, however, Republic had initiated this action on the guaranty against Shoaf, and after the Plan was confirmed, Shoaf raised the defense of
 
 res judicata
 
 in this suit that seeks to collect on the guaranty. The district court rejected the defense and ruled in favor of Republic, holding that the provision of the Plan that released the guaranty was without effect because the bankruptcy court expressly lacked statutory authority to release a third-party guarantor from his obligation on a bankrupt’s note. Shoaf appeals the judgment of the district court.
 

 I
 

 In February 1980, Dr. Joseph Shoaf and Mr. Fred Mergner were principals in Command Energy Company (Command),
 
 [1]
 
 a company engaged in the business of drilling oil wells. In that connection, Command purchased supplies from Republic Supply Company (Republic), and to secure payment for the goods, Republic required Shoaf to sign a guaranty. According to its terms, Shoaf could revoke the guaranty by written notice sent to Republic at Oklahoma City by registered mail, or by personal service on an officer of Republic.
 

 In February 1981, Shoaf left Command following a disagreement with Mergner, and sold his interest. According to Shoaf, he and Command sent separate letters to creditors and other interested parties, announcing that Shoaf was no longer associated with Command. Shoaf testified that Dick Evans of Republic told him that Command was then current in its account, and that Shoaf should talk with Brian Bonnell, an employee, about cancelling the guaranty. Evans, however, denied that this conversation took place. Shoaf further testi
 
 *1048
 
 fied, corroborated by Bonnell, that he gave Bonnell a letter revoking the guaranty. Bonnell stated that he received the letter from Shoaf and forwarded it to Republic’s office in Oklahoma City. Neither Republic’s nor Shoaf’s records reveal a copy of this letter, and its existence was implicitly discredited by the district court. After Shoaf left Command, Republic secured a guaranty from Mergner, and thus, when the case was pending before the bankruptcy court, Republic claimed two guaranties as security for Command’s debt.
 

 Soon after Shoaf’s departure, the company became delinquent in its account with Republic and Republic sued Shoaf in district court on the guaranty for Command’s debts which then exceeded $900,000. Shoaf answered that the guaranty had been cancelled according to its terms and that he was therefore no longer liable. In the meantime, Shoaf filed a separate suit against Command, seeking $2.5 million in damages resulting from the purchase of his interest in Command.
 

 While those suits were pending, Command filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code. The primary concern of the creditors during negotiations in the bankruptcy proceeding was, of course, amassing funds with which to pay their claims. Apparently Command’s only source of a substantial amount of money lay in its claim to proceeds of an insurance policy covering the life of Fred Mergner, the co-guarantor, who had recently died. Entitlement to the insurance proceeds, approximately $1 million, was disputed because Command had paid the premiums for the policy, but Mrs. Mergner, rather than Command, was the named beneficiary. Mrs. Mergner agreed to release to Command $850,000 of the proceeds, but in return, she insisted on a release of all liabilities resulting from Mr. Mergner’s operation of Command. Because she sought release, not only from any direct liability, but also from any liability of the estate as a co-guarantor, release of all guarantors, which included Shoaf, was a condition to Mrs. Mergner’s contribution of the insurance proceeds. Additionally, in further consideration for his release, Shoaf agreed to dismiss with prejudice his action against Command.
 

 After reaching an agreement with Mrs. Mergner, Command proposed to use the $850,000 to pay forty cents on the dollar to its unsecured creditors, including Republic, with an additional ten percent to be paid at a later date. This proposal, along with the releases demanded by Mrs. Mergner, which included Shoaf’s guaranty, were incorporated into paragraph 4.4 of Command’s Second Amended Plan of Reorganization. At a hearing, George Dillon, Republic’s representative who was also President of the Unsecured Creditors’ Committee, questioned the authority of the bankruptcy court to release the guaranty of a nondebt- or. He stated:
 

 On behalf of my client, Republic Supply, we object to this language in that it attempts to abrogate rights which we have — we feel we have against former shareholders and/or officers of the company which are founded upon the writings which are not subject of this bankruptcy, but they are personal guarantees, and to that extent, we feel as though we have the opportunity and should not be precluded as a result of confirmation of this plan ... from attempting to collect the balance of our debt if any, as a result of this discharge from those individuals.
 

 I really haven’t seen any basis in the Code that would allow this to be done, and a disclosure statement does not attempt to show where any jurisdiction which this Court may have over our claims or the claims of others or how our claims, vis-a-vis claims of others, could be adjudicated. Simply put, we have claims against other claimants in this bankruptcy and we just don’t see how those can be abrogated as a result of discharge, and to that extent, we object to all things that attempt to release those.
 
 *1049
 
 object to the disclosure statement in the current language because it seems to cast that language in concrete, but I want it clear that you’re seeking that. It’s not necessarily you’re going to get that in your order of confirmation, and you can object to confirmation if you think appropriate for inclusion of such provision. I’m not commenting as to whether or not I would deny confirmation for that reason or not.
 

 
 *1048
 
 In response, the bankruptcy judge said: At this point, you can put anything in your plan you want to, as long as you disclose it, if I understand Chapter 11 properly, and I think it’s proper that they
 

 
 *1049
 
 When the Plan came again before the bankruptcy judge for a hearing prior to final confirmation, neither Republic nor any other creditor filed an objection to any part of it. The bankruptcy judge then entered an order confirming the Plan expressly stating that the Plan “include[d] the release of any guarantees given to a creditor of the Debtor which guarantees arose out of the Debtor’s business dealings with any creditor of the Debtor.” Republic did not appeal.
 

 When Command sent Republic its check covering the forty percent payment on its debt, the cheek contained an endorsement releasing, among other classes of debtors, all guarantors. Republic refused to endorse the check and moved for relief from the bankruptcy court on the grounds that the requirement that it execute a general release was not provided in the Plan. Such a provision requiring general releases in return for the payments had been included in paragraph 7 of an early plan proposed by the debtor; Republic, however, had objected to that provision and the final Plan confirmed by the bankruptcy court omitted paragraph 7 that provided for this general release. It is undisputed, however, that the approved final Plan specifically provided in a separate paragraph for the release of Shoaf’s guaranty. The motion was heard by a bankruptcy judge who, basing his ruling on a subsequent agreement reached between Republic and Command, entered an order on October 17, 1983 (the October 17 order), that Command pay Republic without requiring execution of the general release as a condition to payment.
 

 After confirmation of Command’s Plan in bankruptcy, Shoaf amended his answer in this action to plead the defense of
 
 res judi-cata.
 
 The case was heard by the district judge who rejected Shoaf’s defenses and entered judgment for Republic on the guaranty in the amount of $451,749.11, plus attorney’s fees of $45,174.91. He reasoned first that the guaranty was still in effect because Shoaf had failed to revoke it in accordance with its specific notice terms. Second, he held that the Plan did not release Shoaf from his guaranty because the bankruptcy court was without authority under the Code to relieve a third party of his obligation. Thus he held finally that the Plan was not
 
 res judicata
 
 to Republic’s suit on the guaranty. This appeal followed.
 

 II
 

 On appeal, Shoaf contends that the district court erred in the following respects: in refusing to give
 
 res judicata
 
 effect to the bankruptcy court order, in denying Shoaf’s arguments that Republic is es-topped to enforce the guaranty and in holding that Shoaf did not effectively cancel the guaranty. Because we hold that the bankruptcy court order is
 
 res judicata
 
 to Republic’s suit, we do not reach the other issues.
 

 III
 

 We must first address, however, Republic’s argument that
 
 res judicata
 
 is not the issue in this case. Republic argues that we should simply interpret the Plan so as to read it devoid of the objectionable provision, since that is the only way to view the Plan as being consistent with the bankruptcy law. Republic contends that a provision that releases guarantors is without effect because it is beyond the authority of the bankruptcy court. Republic points out that under 11 U.S.C. § 524, “discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.”
 
 [2]
 
 Therefore,
 
 *1050
 
 Republic asserts that a proper interpretation of the Plan consistent with section 524 would simply delete the provision releasing Shoaf s guaranty.
 

 We cannot agree with Republic’s argument. At the outset we are not confronted with an issue that requires judicial interpretation of uncertain terms of a Plan; the Plan provision at issue is clear and unambiguous and its intended effect undisputed. Neither can we agree with Republic’s argument that we may disregard the release provision on grounds that it was arguably in excess of the bankruptcy court’s grant of authority. Although section 524 has generally been interpreted to preclude release of guarantors by a bankruptcy court,
 
 [3]
 
 the statute does not by its specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of a plan of reorganization. Regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed. Republic, in effect, is now seeking to appeal the confirmed Plan and asking us to review it on its merits. Questions of the propriety or legality of the bankruptcy court confirmation order are indeed properly addressable on direct appeal. Republic, however, is now foreclosed from that avenue of review because it chose not to pursue it. The issue before us in this appeal is the application, not the interpretation, of the Plan.
 

 Republic also argues that the October 17 order had the effect of deleting the guaranty release provision. After confirmation, as we have earlier noted, Republic filed a “Motion to Compel Proper Payment,” asserting that the Plan did not obligate it to execute a general release in order to be paid. Neither this motion, nor the bankruptcy court’s order granting the relief, addressed the provision of the Plan relating to the release of Shoaf’s guaranty, but dealt only with provisions of former paragraph 7 relating to general releases, a paragraph which had been eliminated before the Plan was confirmed.
 
 [4]
 
 It is therefore clear that the October 17 order had no effect on the provision of the confirmed Plan at issue here.
 

 IV
 

 Having rejected Republic’s initial arguments, we now turn to Shoaf’s argument that the bankruptcy court’s order releasing him from all guaranties is
 
 res judicata
 
 to
 
 *1051
 
 this suit. We start with the premise that a bankruptcy order is entitled to the effect of
 
 res judicata, see Southmark Properties v. Charles House Corp.,
 
 742 F.2d 862, 869 (5th Cir.1984), and proceed to examine the well settled elements necessary for application of
 
 res judicata'.
 
 “[T]he parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.”
 
 Nilsen v. City of Moss Point, Miss.,
 
 701 F.2d 556, 559 (5th Cir. 1983) (en banc).
 

 We discuss each element separately.
 

 A.
 

 Identity of the Parties
 

 There is no dispute that the parties before this court and those before the bankruptcy court are identical. This element is satisfied not only by identity of “formal or paper” parties but also of parties in interest, “that is, ... persons whose interests are properly placed before the court by someone with standing to represent them.”
 
 Southmark Properties v. Charles House Corp.,
 
 742 F.2d 862, 869 (5th Cir.1984) (quoting IB J. Moore,
 
 Moore’s Federal Practice
 
 ¶ 0.411[1] at 390-91 (2d ed.1983). The record in the bankruptcy court shows that both Shoaf and Republic participated in the proceedings as creditors only and became parties even if never formally named as such.
 
 See Southmark,
 
 742 F.2d at 869-70. Therefore, the first element for application of
 
 res judicata
 
 is satisfied.
 

 B.
 

 Prior Judgment by a Court of Competent Jurisdiction
 

 According to Republic, the bankruptcy court was prohibited by 11 U.S.C. § 524 from releasing the guaranty of a third party; therefore it was without subject matter jurisdiction to release Shoaf’s guaranty in the Plan, and accordingly the confirmation of the Plan is not the judgment of “a court of competent jurisdiction.”
 
 [5]
 
 Republic relies on two Fifth Circuit cases,
 
 United States v. Stribling,
 
 734 F.2d 221 (5th Cir. 1984), and
 
 R.I.D.C. Industrial Development Fund v. Snyder,
 
 539 F.2d 487 (5th Cir.1976),
 
 cert. denied,
 
 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977). These cases, however, do not address the question presented here. In both
 
 Stribling
 
 and
 
 R.I. D.C.,
 
 the guarantors argued that they were, apparently as a matter of state contract law, implicitly released as guarantors by bankruptcy plans that restructured the underlying debt. We disagreed and allowed enforcement of the guaranties.
 
 Stribling
 
 and
 
 R.I.D.C.
 
 stand simply for the straightforward proposition that the language of section 524 means that a bankruptcy court’s order discharging or altering the underlying debt does not operate to release the guarantor. Neither case discussed the issue presented here, that is, the
 
 res judicata
 
 effect of a bankruptcy court’s final and unappealed order of confirmation that by its express terms releases a guarantor.
 

 Although no Fifth Circuit case has addressed the question we face here, a similar issue has been addressed by the United States Supreme Court.
 
 [6]
 

 
 *1052
 
 In
 
 Stoll v. Gottlieb,
 
 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), a bankruptcy court had previously confirmed a debtor’s reorganization plan that provided for the discharge of certain gold bonds and the cancellation of the guaranty endorsed on them. Gottlieb, one of the bondholders, did not appear at the hearing on the plan, which was confirmed over the objection of creditors of Gottlieb’s class. The confirmation of the plan was not appealed. Following confirmation, Gottlieb brought an action in a state municipal court to enforce the guaranty of Stoll. After he brought the state court action, Gottlieb moved the bankruptcy court to modify its plan on the ground that the bankruptcy court lacked the power and authority to cancel Stoll’s guaranty. This petition was denied and no appeal was taken. The state court case was thereafter appealed to the Supreme Court of Illinois which held that Gottleib was entitled to enforce Stoll’s guaranty and rejected Stoll’s defense of
 
 res judicata. Id.
 
 at 169, 59 S.Ct. at 136.
 

 On petition for writ of certiorari, the United States Supreme Court assumed, without deciding, that the bankruptcy court lacked jurisdiction of the subject matter and addressed the question of the conclusiveness of the bankruptcy order.
 
 Id.
 
 at 169 & n. 8, 59 S.Ct. at 136 & n. 8. The Court held that a court by necessity has the authority to determine its own jurisdiction over the parties and subject matter, and does so either tacitly or expressly, by rendering a judgment. Consequently, to allow a party to collaterally attack a court’s jurisdiction is to allow retrial of issues already decided. Therefore,
 

 [ajfter a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact. We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation.
 

 Stoll,
 
 305 U.S. at 172, 59 S.Ct. at 137 (footnotes omitted).
 

 Republic attempts to distinguish
 
 Stoll
 
 on its facts, stating correctly that the
 
 Stoll
 
 opinion is based on the Court’s “conclusion ... that in an actual controversy the question of the jurisdiction over the subject matter was raised and determined adversely to [the bondholder].”
 
 [7]
 

 Stoll,
 
 305 U.S. at 177, 59 S.Ct. at 140. According to Republic, the question of jurisdiction was neither “determined [nor] raised” by the bankruptcy judge here.
 

 In the first place, the question of the authority of the bankruptcy judge to act was clearly placed before the bankruptcy court by Republic’s counsel.
 
 See supra
 
 page 1048. Notwithstanding Republic’s contention that the bankruptcy court lacked authority to release the guarantors, the bankruptcy court nevertheless specifically ordered the release of the guaranty.
 
 Stoll
 
 answers Republic’s contention that “the question of jurisdiction was not determined” by the bankruptcy court: “Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter.” 305 U.S. at 171-72, 59 S.Ct. at 137-38. Therefore in entering judgment here, the bankruptcy court, before which jurisdiction was in fact questioned, similarly determined that it had jurisdiction to discharge Shoaf’s guaranty.
 

 Republic nevertheless contends that
 
 Stoll
 
 is distinguishable because the issue of jurisdiction was actually contested in a motion that was expressly decided by the bankruptcy court. Even if
 
 Stoll
 
 implicitly requires the issue of jurisdiction to be litigated and explicitly determined by the court, later eases have made clear that the parties need only have had the opportunity
 
 *1053
 
 to raise the question of jurisdiction. In
 
 Chicot County Drainage District v. Baxter State Bank,
 
 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1939), a bankruptcy court had entered an order cancelling the debtor’s bond obligations if not claimed by the bondholders within one year. The record showed that the bondholders were given notice of the action and had a full opportunity to object to the regularity and fairness of the proceedings, to the propriety of the terms of the plan and to the constitutionality of the statute that authorized the court to approve the plan. Yet none of these objections was raised. After the confirmation of the plan, the statute giving subject matter jurisdiction to the bankruptcy court was ruled to be unconstitutional in another suit. Some of the bondholders then brought suit to enforce the bonds, claiming that the cancellation was void because, in view of later court holdings, it never had subject matter jurisdiction. Ruling for the debtor, the Supreme Court stated: “If the general principles governing the defense of res judicata are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it.”
 
 Chicot County,
 
 308 U.S. at 375, 60 S.Ct. at 319.
 
 See also Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guiñee,
 
 456 U.S. 694, 703 n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982). In response to a question at oral argument, counsel for Republic acknowledged that Republic had the opportunity to appeal the confirmation of the Plan on the ground that the release provision exceeded the authority of the bankruptcy court.
 

 We hold that, for the purposes of
 
 res judicata,
 
 the order adopting the Plan was therefore rendered by a court of competent jurisdiction since the bankruptcy court determined that it had subject matter jurisdiction and that decision was not appealed.
 

 C.
 

 Final Judgment on the Merits
 

 Republic does not argue that the order of confirmation of the Plan is not a final judgment on the merits and it is clear that this element is satisfied. “[A] final judgment for purposes of
 
 res judicata
 
 must finally dispose of some matter which under the substantive law to be applied and the procedural law of the forum can be, and has been, finally disposed of.”
 
 Southmark Properties v. Charles House Corp.,
 
 742 F.2d 862, 870 n. 10 (5th Cir.1984) (quoting IB J. Moore,
 
 Moore’s Federal Practice
 
 110.409[ ].—1] (2d ed.1983)). Although the question of the release of Shoaf’s guaranty was not actually litigated, the bankruptcy court, applying bankruptcy law, confirmed the Plan and disposed of Shoaf’s liability on the guaranty in an order that was final and appealable. It was therefore a final judgment on the merits.
 

 D.
 

 The Same Cause of Action
 

 To determine whether the same cause of action is involved in two suits, the Fifth Circuit has adopted the transactional test of the
 
 Restatement (Second) of Torts. Southmark Properties v. Charles House Corp.,
 
 742 F.2d 862, 869 (5th Cir.1984). Section 24 of the
 
 Restatement
 
 provides in part:
 

 (1) When a valid and final judgment rendered in an action extinguishes the plaintiff’s claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
 

 Therefore, applying this test, we must determine whether the bankruptcy court’s order confirming the Plan extinguished Republic’s cause of action to enforce the guaranty.
 

 Republic simply does not apply the transactional test when it attempts to define the causes of action that were before the bankruptcy court as “the administration and distribution of the debtor’s estate, and the equitable reduction of its debt.” In the broadest sense, the definition describes the predicate upon which relief was granted, but it is also clear that the bank
 
 *1054
 
 ruptcy court entered a judgment which, in releasing Shoaf from any liability to Republic on the guaranty, extinguished Republic’s claim. The only question, under the transactional test, that we must consider is whether the cause of action that Republic now asserts arose out of the same transaction that was the subject of the bankruptcy court’s order that relieved Shoaf of liability. The bankruptcy court’s order makes it indisputably clear that it did. “[The] release shall include the release of any guarantees given to any creditor of the debtor which guarantees arose out of the debtor’s business dealings with any creditor of the debtor....” Indeed, as Republic must admit, the guaranty it now attempts to enforce is identical to the guaranty that was the subject of the bankruptcy order.
 
 [8]
 

 We therefore conclude that the elements necessary for application of
 
 res judicata
 
 are satisfied,
 
 [9]
 
 and that, accordingly, Republic’s cause of action for enforcement of the guaranty is barred by the bankruptcy court’s order confirming the Plan.
 

 Y
 

 Therefore, we hold that the doctrine of
 
 res judicata
 
 bars Republic’s suit to enforce the guaranty and the judgment of the district court is
 

 REVERSED and RENDERED.
 

 [1]
 

 . The company was originally known as Command-Mergner Energy Company, but later its name was changed to Command.
 

 [2]
 

 . The Bankruptcy Act of 1898 contained a similar provision codified at 11 U.S.C. § 34: "The liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a
 
 *1050
 
 bankrupt shall not be altered by the discharge of such bankrupt."
 

 [3]
 

 .
 
 See, e.g., In re Sago Palms Joint Venture,
 
 39 B.R. 9, 10 (Bankr.S.D.Fla.1984) (language in confirmed plan releasing guarantors is without effect);
 
 see also infra
 
 pp. 1050-1051 (discussion of
 
 United States v. Stribling,
 
 734 F.2d 221 (5th Cir.1984) and
 
 R.I.D.C. Industrial Development Fund v. Snyder,
 
 539 F.2d 487 (5th Cir.1976),
 
 cert. denied,
 
 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977)).
 

 [4]
 

 . Our conclusion is supported by the testimony of James F. Metzer, who was attorney for Republic when the motion to compel payment was presented to the bankruptcy court. The transcript of the proceedings before the district court reflects the following exchange between Shoaf s attorney and Metzer relating to the October 17 order:
 

 Q. Mr. Metzer, I am going to make a fine distinction here and I think this was the distinction that was being made: The plan did not specifically say that Republic Supply had to sign the release; isn’t that right?
 

 A. That's correct.
 

 Q. However, the plan by its language released Dr. Shoaf of his guaranty.
 

 A. It purported to.
 

 Q. Okay. Now, the reason that Republic Supply was objecting to having to sign the release was that the order did not specifically say that they had to sign a release.
 

 A. That’s absolutely right.
 

 Q. Okay. But this motion to compel proper payment was not a motion to try to change the provisions of the plan which was confirmed by Judge Flowers; is that correct?
 

 A. It was filed to, in essence, object to having to sign a release that was not part of the plan.
 

 Q. Again, my question is, this motion to compel proper payment was not an attempt by Repubublic Supply to change the terms of the plan which was confirmed by Judge Flowers.
 

 A. That’s correct, it was to try to enforce the terms of the plan.
 

 [5]
 

 . We assume without deciding that section 524 precluded the bankruptcy court from asserting its jurisdiction over the question of Shoaf’s liability under the guaranty.
 

 [6]
 

 . Republic incorrectly argues that the Seventh Circuit in
 
 Union Carbide Corp. v. Newboles,
 
 686 F.2d 593 (7th Cir.1982), has addressed the issue we decide today. In
 
 Newboles,
 
 the Seventh Circuit held that although Union Carbide, the creditor, had approved a reorganization plan that provided for release of its guarantor, Union Carbide could nevertheless enforce the guaranty since the bankruptcy court's discharge was outside its powers to act and hence had no effect. Although we reach a different result from the Seventh Circuit’s, in the sense that we deny enforcement of the guaranty, our opinion today creates no conflict between the circuits.
 
 Res judicata,
 
 the sole basis of our decision today, was not raised or addressed in
 
 Newboles.
 
 Our opinion today does not call into question the holding of the Seventh Circuit that a bankruptcy court is without authority to release a guarantor even though the creditor approves the plan releasing its guarantor. Indeed, our opinion today assumes that the bankruptcy court did not have subject matter jurisdiction to release the guaranty in question here.
 

 [7]
 

 . Republic also states in its brief that
 
 Stoll
 
 is distinguishable because it is a direct appeal from a state court, rather than as here, a federal court, and because of the nature of the guaranty at issue in
 
 Stoll.
 
 Republic, however, does not explain how these differences should undermine our reliance on
 
 Stoll.
 

 [8]
 

 . Republic argues that the same causes of action are not involved in the two cases because the bankruptcy court could not hear and decide a suit to enforce a guaranty, that being a noncore proceeding. Republic’s argument again ignores the definition of "cause of action” under the transactional test. Under the transactional test, the cause of action to enforce the guaranty arose out of the same transaction, and the bankruptcy court released Shoaf from liability under the guaranty. Thus Republic’s remedy against Shoaf to enforce the guaranty was extinguished.
 

 [9]
 

 . Republic finally argues that policy interests mandate our refusing to give
 
 res judicata
 
 effect to the bankruptcy court judgment. The Supreme Court has recognized that certain interests are sufficiently important to prevail over the application of the doctrine of
 
 res judicata. See, e.g., United States v. USF & G Co.,
 
 309 U.S. 506, 514-15, 60 S.Ct. 653, 657-58, 84 L.Ed. 894 (1940) (doctrine of immunity);
 
 Kalb v. Feuerstein,
 
 308 U.S. 433, 443-44, 60 S.Ct. 343, 348, 84 L.Ed. 370 (1940) (congressional action limiting jurisdiction). Republic contends that the bankruptcy court’s action is a "drastic overreaching of its allotted powers,” which should not be condoned by enforcing the judgment, and that enforcement would also undermine a creditor’s ability to rely on a guaranty. Neither of these interests outweighs the policy behind application of the doctrine of
 
 res judicata.
 

 In
 
 Stoll,
 
 the Court expressly acknowledged that “[a] court does not have the power, by judicial fiat, to extend its jurisdiction_”
 
 Id.,
 
 305 U.S. at 171, 59 S.Ct. at 137. The Court concluded, however, that this general rule must be limited to allow a court to determine whether it has jurisdiction and that such an exception to the rule is warranted because of the superior interest in having “a place to end ... litigation.”
 
 Id.
 
 at 172, 59 S.Ct. at 137. We read
 
 Stoll
 
 to mean, therefore, that at least in the case of a bankruptcy court’s exceeding its statutory authority by releasing a guarantor of a debtor, the interest in finality surpasses any threat that courts will engage in drastic overreaching.
 

 Republic’s second argument is belied by its own conduct in this case. It had a fair opportunity to protect its guaranty by applying the bankruptcy court's order confirming the Plan, but chose not to. Moreover, it is implicit in
 
 Stoll
 
 that a creditor’s interest is not a sufficient policy concern to outweigh the application of
 
 res judicata
 
 to the facts before us today.