**In re ACORN HOTELS, LLC d/b/a Ramada Inn & Suites, Debtor.**

**No. 99–50040–C.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Aug. 2, 2000.

Claiborne B. Gregory, Sr., San Antonio, TX, for debtor.

Stephanie McClain Hall, Strasburger & Price, L.L.P., San Antonio, TX, Timothy R. Greiner, Greiner, Gallagher & Cavanaugh, L.L.C., Parsippany, NJ, for Ramada Franchise Systems.

Leonard Harvey Simon, Boyar, Simon & Miller, Houston, TX, for Edward McClure and NAAZ Oak Ridge Investors.

**ORDER DENYING RAMADA FRANCHISE SYSTEM LIMITED RELIEF FROM CONFIRMATION ORDER PURSUANT TO RULE 60(B)(4) AND 60(B)(1)**

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the Motion of Ramada Franchise Systems, Inc. (RFS) for Relief from Confirmation Order pursuant to FED.R.CIV.P. 60(b), made applicable in bankruptcy cases by FED.R.BANKR.P. 9024. After reviewing the moving papers and the applicable law, the court finds that RFS's motion is without merit and must be denied.

### BACKGROUND

On January 24, 2000, the court entered an Order approving the debtor's First Amended Disclosure Statement. This Order shortened the notice period for the confirmation hearing from twenty-five (25) days to fifteen (15) days. The Order set February 7, 2000 as the deadline for filing and serving objections to confirmation, and for submitting ballots accepting or rejecting the debtor's Amended Plan.

On January 31st, RFS received a copy of the Amended Plan and a copy of the Order approving the Amended Disclosure Statement. On February 7th, RFS submitted by fax its ballot rejecting the Amended Plan. Also on February 7th, RFS referred the entire matter to its outside bankruptcy counsel Greiner, Gallagher & Cavanaugh (GG & C), a New Jersey law firm. RFS maintains that it instructed GG & C (via e-mail messages sent on February 7th and February 15th) to object to confirmation of the plan. In these e-mail messages, RFS specifically complained about a provision in the plan that purported to release McClure from his personal guaranty[1], and directed GG & C to raise this concern in the objection RFS expected to be timely filed.

However, GG & C never filed an objection to the plan[2], which was confirmed by the court on February 25, 2000. GG & C says that it did not file anything because it did not receive the aforementioned e-mail instructions from its client. GG & C explains that its Lotus System was partially disabled on the above dates, so that RFS's two e-mail messages were not received until after the February 16th confirmation hearing.

RFS asserts that it should be granted limited relief from the Confirmation Order because: (1) its failure to file an objection to confirmation was the result of inadvertence and excusable neglect, and/or (2) the

court lacked subject matter jurisdiction to release a nondebtor from his guaranty obligations. It relies on two subparagraphs of Rule 60(b), clauses (1) and (4). The debtor and guarantor assert that RFS's motion should be denied because: (1) the failure to object was not the result of inadvertence or excusable neglect; (2) the motion is barred by res judicata; (3) the motion is barred by the mootness doctrine; (4) the relief requested is an impermissible attempt to modify the plan; and (5) the release provision was supported by consideration and is an integral part of the plan of reorganization.

### ANALYSIS

#### A. WHY *SHOAF* IS NOT CONTROLLING IN THIS CASE.

Both the debtor and McClure (the released guarantor) argue that RFS' attempt to attack the confirmation order is doomed by the Fifth Circuit's holding in *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir.1987). In *Shoaf*, they note, the Fifth Circuit ruled that an order confirming a Chapter 11 plan releasing a third party has *res judicata* effect, and cannot be collaterally attacked. However, *Shoaf* is not controlling in the present case, because the procedural posture is different. At issue in *Shoaf* was the propriety of a *collateral attack* on an otherwise final judgment, urged by a creditor suing on a guaranty.[3] Here, by contrast, RFS is

---

1. Section 4.15(D) of the plan provides:

 The debtor believes that it holds substantial claims and causes of action against [RFS] for breach of contract and fraud with respect to the license agreements, and bad faith dealing [sic]. The debtor has determined that it is in the best interest to resolve its claims and causes of action against [RFS]. Accordingly, and as consideration for the compromise, settlement and release of any and all such claims and cause of action held by the debtor against [RFS], and all claims and causes of action held by [RFS] against the debtor, and its principals, on the effective date, the debtor will pay [RFS] $10,000.00.

 *See* Section 4.15(d) of *Acorn Hotel's First Amended Liquidating Plan of Reorganization.*

2. The court also notes that RFS's counsel was present at the confirmation hearing, but made no oral objection to the plan or any specific plan provision.

3. The creditor had initiated a collection suit in federal *district* court against the guarantor prior to confirmation of the bankruptcy debtor's chapter 11 plan (which plan purported to release the guarantor). The plan was confirmed during the pendency of the collection suit, and the guarantor filed an amended answer to raise the defense of *res judicata.* The district court rejected the defense (interestingly, on grounds that the bankruptcy court lacked statutory authority to render such relief), and the guarantor appealed the resulting judgment against it. The district court action,

launching a *direct attack* on the offending confirmation order—and that distinction makes all the difference in the world.

The Fifth Circuit in *Shoaf* was at pains to explain that it assumed that the bankruptcy court did *not* have subject matter jurisdiction to release the guaranty in question. But that lack of subject matter jurisdiction was deemed irrelevant in the context of a *collateral attack* on a judgment. Citing Supreme Court precedents, the Fifth Circuit explained that the bankruptcy court of necessity determined that its jurisdiction over the subject matter of release of a third party guarantor in the course of ruling on confirmation, and that the creditor could have, but failed to, attack that determination on appeal. The bankruptcy court's finding of subject matter jurisdiction thus became final and could not be subsequently attacked collaterally in an entirely separate collection action. Instead, *res judicata* could and did attach to the judgment, even though that judgment would have been vulnerable on direct appeal as void for lack of subject matter jurisdiction. *Shoaf,* 815 F.2d, at 1053, *citing Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940); *see also Stoll v. Gottlieb,* 305 U.S. 165, 169, 59 S.Ct. 134, 136, 83 L.Ed. 104 (1938). The creditor's failure to launch a *direct* attack on the confirmation order (which, the Fifth Circuit ruled, it had the opportunity to do) proved fatal to later remon-

strations about lack of subject matter jurisdiction.

■ That is not the case here, however. A Rule 60(b)(4) motion is, by definition, *not* a collateral attack. It is a *direct* attack, brought in the same case and before the same court that entered the offending judgment.[4] It traces its roots to equitable remedies that were designed to assure that justice be done in light of all the facts. *See Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.1970), *see also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 11 FED. PRACT. & PROC., CIVIL 2D, § 2851 at 227 (West 1995). The rule permits the court that entered the judgment to correct or set aside judgments on a variety of equitable grounds that were formally available by means of various writs and ancillary remedies.[5] "The usual procedure is by motion in the court and in the action in which the judgment was rendered." *Id.* at 229. Thus, though such an action may be described as "ancillary" in nature, it is clearly not *collateral.*

■ Just as *res judicata* will foreclose a challenge to subject matter jurisdiction in the context of a collateral attack on a judgment, the reverse is true in the context of a "direct attack"—the lack of basis for subject matter jurisdiction may render the resulting judgment void, permitting it to be set aside pursuant to Rule 60(b)(4), even though the jurisdictional challenge might not have been made at trial, and *res judicata* cannot be raised as

---

being a lawsuit entirely separate from the bankruptcy case, was "collateral" to the bankruptcy action. *Shoaf,* 815 F.2d, at 1047.

**4.** Neither *Stoll v. Gottlieb* nor *Chicot County* (the Supreme Court precedents on which the Fifth Circuit relied in *Shoaf* ) apply in this context. Both *Stoll* and *Chicot County* involved enforcement actions brought in a state court, after entry of the bankruptcy court's confirmation order. Wright & Miller, unfortunately, cites *Chicot County* to support the suggestion that a failure to contest lack of subject matter jurisdiction at trial renders the trial court's finding of subject matter jurisdic-

tion binding—an oblique suggestion that *res judicata* applies to Rule 60(b)(4) motions. *See* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 11 FED.PRACT. & PROC., CIVIL 2D, § 2862 (West 1995). The suggestion should be taken with more than a few grains of salt, given the treatise's failure to note that *Chicot County* was a collateral attack case, and *not* a Rule 60 case.

**5.** The rule expressly displaced the ancillary remedies of coram nobis, coram vobis, audita querela, and bills of review. *Wright & Miller, supra,* at 229.

a bar to such a direct challenge.[6] The Fifth Circuit in *Southmark Properties* explained that, to raise *res judicata* as a defense, the underlying judgment must "finally dispose of some matter which under the substantive law to be applied *and the procedural law of the forum* can be, and has been, finally disposed of." *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870 n. 10 (5th Cir.1984) (emphasis added). If a procedural law challenge has not yet been disposed of, *Southmark* teaches, *res judicata* is not yet available as a defense. And Rule 60(b) is one such procedural device, expressly permitting trial courts to set aside their own, otherwise final, judgments. It is an exception to the general rule of finality that normally attaches to judgments from which no timely appeal has been taken. 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER & MARY KAY KANE §§ 2851, 2857; *see In re Casco Chemical Co.*, 335 F.2d 645, 651 (5th Cir. 1964) ("Of course a rule 60(b) proceeding . . . calls for a delicate adjustment between the desirability of finality and the prevention of injustice"). *Res judicata*, an affirmative defense that has as its touchstone the principle of finality of judgments, can have no application in a Rule 60(b) action, the very purpose of which is to accord to trial courts an equitable *exception* to the normal rules of finality.

Accordingly, reliance on *Shoaf* in this case is misplaced. The holding in *Shoaf* does not preclude RFS from seeking relief from the confirmation order under Rule

60(b)(4) because such relief is, by definition, a sanctioned attack on an otherwise final judgment, and *not* a proscribed collateral attack.[7] The court must thus turn to the merits of RFS' Rule 60(b) motion.

## B. RULE 60(B)(4) RELIEF.

■■■■ Generally, if a judgment is void, the trial court that entered that judgment must grant relief from that judgment on motion made pursuant to Rule 60(b)(4).[8] A judgment is said to be void, *inter alia,* when the court that rendered it lacked subject matter jurisdiction to grant the relief accorded by the judgment. *See* WRIGHT & MILLER, 11 FED.PRACT. & PROC., CIVIL 2D, § 2862, at 326–327 (West 1995) ("Wright & Miller"). That treatise has observed that the court has "no discretion" in such situations because a judgment is either void or it is not. *See* 11 Wright & Miller at 322; *see also Chambers v. Armontrout,* 16 F.3d 257, 260 (8th Cir. 1994) ("[R]elief from void judgments is not discretionary."). That observation should not be taken at face value, however, for circuit courts have also cautioned that the rule cannot be used as a substitute for a party's failure to take a timely appeal from an erroneous ruling on subject matter jurisdiction. *See Kocher v. Dow Chemical Company,* 132 F.3d 1225, 1228 (8th Cir. 1997); *Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.,* 624 F.2d 822, 825 n. 4 (en banc), *cert. denied,* 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980).[9]

---

**6.** As we shall see shortly, the rule is *not* absolute on this point. There are circumstances in which a judgment will not be set aside notwithstanding an arguable lack of subject matter jurisdiction, because the interests of finality become paramount. *See* discussion *infra. Wright & Miller* advert to this tension in their treatise: "The policy of the law to favor a hearing of a litigant's claim on the merits must be balanced against the desire to achieve finality in litigation. . . .The cases show that although the courts have sought to accomplish justice, they have administered Rule 60(b) with a scrupulous regard for the aims of finality." WRIGHT, MILLER & KANE, 11 FED.PRACT. & PROC., CIVIL 2D, § 2857, at 256, 260 (West 1995).

**7.** In fact, the purpose of RFS's Rule 60(b) Motion is to obtain relief from the Confirmation Order because of the Order's potential *res judicata* effect in a subsequent guaranty action in *another* court.

**8.** Fed.R.Civ.P. 60(b) provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void."

**9.** "If a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed

To prevent just such abuse, courts have devised a subject matter jurisdiction "test" for use in applying Rule 60(b)(4). Under this "test", relief under the Rule is appropriate only when the court's asserted lack of subject matter jurisdiction was "so glaring as to constitute a total want of jurisdiction" or constituted "a plain usurpation of power". *See Picco v. Global Marine Drilling Company,* 900 F.2d 846, 850 n. 6 (5th Cir.1990) (citing *Nemaizer v. Baker,* 793 F.2d 58, 65 (2nd Cir.1986)); *Kocher v. Dow Chemical Company,* 132 F.3d at 1230 (quoting *Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.,* 624 F.2d at 825). Said another way, a judgment is not *void* for lack of subject matter jurisdiction unless "no arguable basis" for jurisdiction existed in the first place. *See Nemaizer v. Baker,* 793 F.2d 58, 65 (2d Cir.1986) (citing *Lubben v. Selective Serv. Sys. Local Bd. No. 27,* 453 F.2d 645, 649 (1st Cir.1972)).

■ When a court is applying this test, it does *not* need to decide whether it actually had subject matter jurisdiction. That would be the appropriate question on appeal. It is not an appropriate question under Rule 60(b)(4). A party is not permitted to substitute a Rule 60(b)(4) motion for its own failure to take a timely appeal from a confirmation order that releases a third party unless the party demonstrates that there was a "total want of jurisdiction" and/or "a plain usurpation of power" (i.e. "no arguable basis for jurisdiction") when the court granted the release in the confirmation process. Said another way, if there was at least an arguable basis in this case for the court's finding that it had subject matter jurisdiction to release McClure in the order confirming the debtor's plan of reorganization, then Rule 60(b)(4) relief must be denied to RFS. Otherwise, RFS would be permitted to evade the normal rules for perfecting a merely because the same argument would have succeeded on appeal." *See Kocher* at 1229 (citing *Kansas City Southern Ry. Co.*).

timely appeal by means of the Rule 60(b)(4) process, which the courts have branded an abusive practice. Our task, then, is to determine whether there was at least an "arguable basis" for the court's exercising jurisdiction to accord McClure a release.

■ Many courts have indeed concluded that bankruptcy courts do not have subject matter jurisdiction to release nondebtor guarantors in a confirmed plan. *See Matter of Sandy Ridge Development Corp.,* 881 F.2d 1346, 1351 (5th Cir.1989); *see also Matter of Zale Corp.,* 62 F.3d 746, 760 (5th Cir.1995) (stating that section 524 prohibits the discharge of debts of nondebtors); *NCNB Texas Nat. Bank v. Johnson,* 11 F.3d 1260 (5th Cir.1994) (same). However, the courts do not speak with one voice on this issue—indeed conflicting signals emanate from within the Fifth Circuit itself. It was the *Shoaf* panel itself that observed that section 524 "does not by its specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an *integral part of a plan of reorganization.*" *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir.1987) (*emphasis added*); *accord In re Specialty Equip. Companies, Inc.,* 3 F.3d 1043, 1047 (7th Cir.1993) (section 524(e) does not by its specific words "preclude all releases that are accepted and confirmed as an integral part of a reorganization."); *see also In re Applewood Chair Company,* 203 F.3d 914, 918–919 (5th Cir.2000) (proscribing general releases, but suggesting that *specific* releases might be permissible); *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 293 (2nd Cir.1992); *In re A.H. Robins, Inc.,* 880 F.2d 694, 702 (4th Cir.1989); *see generally In re Continental Airlines,* 203 F.3d 203, 212–214 (3rd Cir.2000) (collecting and discussing conflicting decisions).[10]

10. The Third Circuit declined to "pick a side" in the debate over the propriety of releases and injunctions of nondebtor obligations:
 Given the manner in which the issue has been presented to us, we need not establish

Both the debtor and McClure have pointed out that, in this case, the release provision was integral to the success of the plan and that the release was given for consideration (*i.e.*, the estate's and McClure's abandoning their counterclaims against RFS). There is a substantial body of case law that suggests at least an arguable basis for a bankruptcy court's exercise of subject matter jurisdiction to grant just such a release under just such circumstances. *See Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir.1996); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2nd Cir.1992); *see also In re Continental Airlines, Inc.*, 203 F.3d 203, 214–215 (3rd Cir.2000). The court, it will be recalled, need not find that it *in fact* had subject matter jurisdiction to order the release of McClure in the debtor's plan. It need only find *an arguable basis* for its conclusion that it had jurisdiction to do so. Given the rather hotly contested state of the law on the issue to date, the court in fact *did* have an arguable basis for its conclusion, and its resulting exercise of jurisdiction in according a release to McClure cannot fairly be described as a "plain usurpation of power," nor can it be alleged to have "glaringly" lacked subject matter jurisdiction. Short of that standard, Rule 60(b)(4) relief on grounds of voidness for lack of subject matter jurisdiction is not appropriate. *See Picco v. Global Marine Drilling Company*, 900 F.2d at 850; *Kocher v. Dow Chemical Co.*, 132 F.3d, at 1230; *Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d at 825.

**C. RULE 60(B)(1) RELIEF.**

 RFS has also sought relief from the confirmation order under Rule 60(b)(1) on the grounds that its failure to file an objection to confirmation (and the plan provision purporting to release the non-debtor guarantor) was the result of inadvertence and excusable neglect. The factual grounds urged by RFS could only arise on the cusp of the 21st century—reliance on email to communicate with counsel, and the alleged breakdown of counsel's email system. Intriguing as these facts may be, more prosaic issues turn out to be dispositive of this request for relief.

 Any motion brought under Rule 60(b) is one originating in equity. As such, equitable principles apply to the propriety of granting relief. It is generally held that relief will not be appropriate if intervening rights have attached in reliance upon the judgment, or if an actual injustice would ensue as a result of granting relief. *See* 11 WRIGHT & MILLER, § 2857 at 262. The limitation is similar to that imposed by the doctrine of equitable mootness, often applied in the context of appeals. An appeal from a confirmation order might be dismissed on mootness grounds if, *inter alia*, the relief requested would affect either the rights of parties not before the court or the success of the plan. *See In re U.S. Brass Corp.*, 169 F.3d 957, 959 (5th Cir.1999); *see also In re Berryman Products, Inc.*, 159 F.3d 941, 944 (5th Cir.1998) (noting that a plan that is substantially consummated may render it impossible as a practical matter to enter effective judicial relief).

Granting RFS relief in this case would, in this court's view, significantly alter the rights of third parties other than these

---

our own rule regarding the conditions under which non-debtor releases and permanent injunctions are appropriate or permissible. Establishing a rule would provide guidance prospectively, but would be ill-advised when we can rule on Plaintiffs' appeal without doing so. *Id.* at 214. The court added in a footnote that lower courts in its circuit had held releases permissible if consensual, though not in the context of mass litigation, but noted that the release and permanent injunction in the case before it were "so clearly invalid [for lack of any evidentiary predicate whatsoever] . . . we need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *Id.* at 214, n. 11.

litigants and jeopardize the plan's success. In the context of negotiating a confirmable Chapter 11 plan, a debtor often reaches accommodations with numerous creditors regarding provisions of the plan. These accommodations become binding when the court confirms the plan, and rights vest as a result. Granting RFS even the limited relief it says it desires would deprive other creditors in this case of the benefits of the accommodations they reached with the debtor. The creditors voted overwhelmingly in favor of this plan with the understanding and expectation that the compromise, settlement and release provision was in their best interest. It settled a potentially large claim against the debtor that would have ultimately resulted in less funds available for distribution to them. Unwinding that provision reopens the potential for expensive and protracted litigation, at the expense of those creditors. The outcome of that litigation is far from certain, and could well result in additional liability being imposed on the estate, with less funds remaining available for distribution to creditors.[11] Given that substantially altered outcome, it is not at all certain that creditors would vote in favor of a different plan, leaving the entire future of this case in doubt.[12]

Granting RFS relief would have an even more profound effect on NAAZ Oak Ridge Investors, Inc., the third party purchaser of substantially all of the debtor's assets. NAAZ expected a smooth transition in acquiring the debtor's assets and there has indeed been a smooth transition: all of the assets of the debtor have already been transferred to NAAZ, NAAZ has assumed the management and control of the property, McClure has continued to be involved in the management of the property with little or no interruption, and NAAZ has commenced making distributions under the plan.[13] Granting RFS relief would destroy this smooth transition. First, NAAZ sought the property with an eye to converting it to an assisted living home as soon as possible. The settlement between the debtor and RFS was integral to NAAZ's purchasing the assets and transforming the property from a hotel to an assisted living home. Absent the *total* settlement of all issues it is likely that NAAZ would have balked at purchasing the assets of the debtor because the resulting litigation would delay the transfer of the debtor's assets to NAAZ and would have precluded the transformation of the property from hotel to assisted living home. Thus, the settlement made the property immediately available, significantly increasing NAAZ's desire to purchase the assets of the debtor. Second, the subsequent litigation that would follow would substantially affect NAAZ by interfering with McClure's management of the asset. NAAZ specifically retained McClure for his intricate and specialized knowledge of the management of this particular property, and that retention was viewed as integral to the value of the purchase. Granting RFS relief would subject McClure to litigation with RFS, significantly distracting him from the job NAAZ has counted on him doing—successfully and efficiently developing and managing the property for NAAZ.[14] Had NAAZ known that McClure

---

**11.** Of course, RFS could be held liable to the debtor. Given the risks of going to trial and the very real possibility of an adverse judgment, it would seem that RFS would be content with the $10,000.00 it has received under the plan (or 36% of its prepetition claim, more than twice what other holders of unsecured claims are to receive).

**12.** A third party purchaser made this plan feasible. Unraveling the deal raises the very real possibility that the buyer would go away, or at the least retrade the deal for less consid-

eration. In this court's experience, that is more than just a remote possibility. That is in fact the likely outcome.

**13.** NAAZ has begun making payments to the Tennessee Department of Revenue, Transamerica Small Business Capital, equipment lease holders, and has paid the Class 13 creditors in full.

**14.** Granting RFS relief from the confirmation order also raise some other practical issues. Given the affect of such relief would the debt-

would be subject to post-confirmation litigation, it is unlikely that they would have considered purchasing the debtor's assets at all.[15]

In short, RFS cannot be granted "limited relief" from the plan provision settling the claims between it and the debtor without adversely affecting the entire plan, substantially altering the rights and interests of other creditors, and of NAAZ. When intervening rights have attached in reliance upon a confirmation order, as they clearly have here, and when an actual injustice would ensue if relief were granted, the relief under Rule 60(b)(1) is clearly not appropriate. The equitable considerations underlying a Rule 60(b) motion heavily outweigh any entitlement of RFS's to Rule 60(b) relief. Therefore, RFS's Rule 60(b)(1) relief must be denied.[16]

### CONCLUSION

Based on the foregoing, RFS's request for relief from the Confirmation Order is denied. Section 4.15(D) of Acorn Hotels Confirmed Amended Plan which purports to release Edward R. McClure from his guaranty obligations to RFS remains in full force and effect. Accordingly, Edward R. McClure's guaranty obligations to RFS were discharged in the confirmed plan.

So ORDERED.

---

or be required to draft and propose a "revised" plan or would the current plan remain with a modification? Would the affected creditors be able to vote in favor of or against the "revised/modified" plan or be held to their prior vote? Would NAAZ be able to nullify the purchase of the debtor's assets and return the property to the debtor or is NAAZ forced to keep the property including any additional liability to RFS? These practical considerations offer additional reasons for denying RFS relief.

15. The Disclosure Statement spells out the close interrelationship between NAAZ' purchase and its reliance on McClure's skills, expertise and continued involvement.

16. The court has not reached the other, perhaps more interesting question regarding whether RFS' failure to timely object prior to confirmation was the result of excusable neglect. But it is at least worth noting what Wright & Miller have to say:

... [R]elief will not be granted under Rule 60(b)(1) merely because a party is unhappy with the judgment. Instead the party must make some showing of why he was justified in failing to avoid mistake or inadvertence. Gross carelessness is not enough. Thus, relief has been denied based on the attorney's careless actions in misplacing papers in an office move, failing to discover service of process, mistakes in office procedures, failing to read a proposed settlement, losing track of time, or when the oversight was due to the demands of being a busy lawyer. 11 WRIGHT & MILLER, § 2858, at 276–79. The treatise also adverted to one case in which the court refused to reopen a judgment when the only "excusable neglect" to which the party could point was that he had failed to take an appeal within the time the rules allowed. *Id.* at 276. There is thus considerable doubt that RFS could have made out an excusable neglect argument on the grounds it has alleged in this case.