In re Mark L. JACKSON and Virginia A. Jackson, Debtors.

**Bankruptcy No. 91–3922–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

Nov. 15, 1991.

---

Kenneth G. Mayfield, Oklahoma City, Okl., for debtors.

Jared D. Giddens, Bryan J. Wells, Self, Giddens & Lees, Inc., Oklahoma City, Okl., for creditor.

## ORDER ON OBJECTION TO CONFIRMATION OF PLAN

PAUL B. LINDSEY, Bankruptcy Judge.

### INTRODUCTION

On June 3, 1991, debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code.[1] Debtors are indebted to Cash America Investments, Inc. ("Cash America") in the amount of $540 based upon three pawn tickets given on April 1, 1991 for $295; on April 8, 1991, for $108; and on May 18, 1991, for $114. To secure the amounts owed to Cash America, debtors delivered possession of certain collateral to Cash America. The collateral was in Cash America's possession on the date debtors' petition was filed. Debtors' Chapter 13 plan would pay Cash America's claim in 24 monthly payments of $25.24, including interest at the rate of 10 percent per annum.

On July 16, 1991, Cash America filed an objection to debtors' plan. Cash America contends that debtors are preventing it from satisfying its claims through the sale of the collateral pursuant to the provisions of the Oklahoma Pawnshop Act.[2] Cash America also contends that the collateral pledged by debtors on April 1, 1991, is not property of the bankruptcy estate pursuant to §§ 541 and 1306 of the Code, and § 1509(D)(j) of the Act.[3] Cash America further contends that debtors' plan is not confirmable pursuant to § 1325 of the Code for the following reasons: (1) the plan affects rights in property in which debtors have no interest; (2) the proposed monthly payments have a value as of the effective date of the plan less than the value of Cash America's interest in the collateral[4]; (3) pursuant to § 108(b) of the Code, debtors were required to redeem the collateral pledged on April 8 and May 18, 1991, by payment in full, not later than 60 days after the filing of the bankruptcy petition; (4) debtors' plan creates a "recourse" debt to the extent of the allowed claim, while State law prohibits Cash America from entering into recourse transactions with customers.

On September 9, 1991, a confirmation hearing was held on debtors' plan. The matter was taken under advisement and the parties were permitted to file supplemental briefs.

### CONTENTIONS OF THE PARTIES

In a typical pawn transaction, a pawnbroker loans money to a customer, and takes

---

1. 11 U.S.C. §§ 101 et seq. (hereafter, the "Code").

2. Okla.Stat. tit. 59, §§ 1501 et seq. (hereafter, the "Act").

3. Section 1509(D)(j) provides in pertinent part: [P]ledged goods may be forfeited to the pawnbroker thirty (30) days after the specified maturity date, provided that the pledged goods may be redeemed by the customer within thirty (30) days following the maturity date of the pawn transaction....

4. Cash America contends that under the terms of the pawn agreement, it is entitled to an interest rate equal to a maximum of 240 percent per annum. See note 6, *infra.*

possession of collateral pledged by the customer as security for the loan. The maturity of the transaction must be no more than one month after the date of the transaction.[5] At any time prior to maturity, the customer may "redeem" the collateral by repaying the amount of the loan plus a pawn finance charge.[6] If a customer fails to redeem the goods prior to maturity, the pawnbroker must continue to hold the goods for an additional 30 days, and if the goods are not redeemed within that period, the goods may be forfeited and become the property of the pawnbroker.[7]

Cash America contends that, on the petition date, debtors had no legal or equitable interest in the collateral pledged on April 1, 1991, since the pawn ticket had matured and the redemption period provided by State law had expired prior to that date. Cash America argues that the collateral was forfeited and became the property of Cash America pursuant to § 1511(B) of the Act prior to the petition date, and that therefore it may not be dealt with in the bankruptcy case or in the plan.

Cash America recognizes that § 108(b) of the Code[8] extends the redemption period as provided by § 1511(B) of the Act as to the remaining two pawn transactions, but contends that the automatic stay of § 362(a) does not create or effect a further extension.[9] Cash America therefore argues that through the operation of § 108(b) of the Code, the redemption period for both the April 8 and the May 18, 1991 transactions, which would have expired but for the filing of the bankruptcy petition on June 7 and July 18, 1991, respectively, expired on August 2, 1991, 60 days after the petition date. Thus, Cash America concludes that after that date, neither debtors nor the bankruptcy estate had any interest in the property, and that it may not therefore be dealt with in the plan.

Cash America contends that debtors' plan fails in two particulars to meet the

---

5. Section 1511(C)(6) of the Act provides:
    (C) Prohibited Practices. A pawnbroker shall not:

    .    .    .    .    .

    (6) Enter any pawn transaction which has a maturity date more than one (1) month after the date of the transaction....

6. See note 3, *supra,* for the text of Section 1509(D)(j) of the Act.
    Section 1511(C)(4) provides:
    (C). Prohibited Practices. A pawnbroker shall not:

    .    .    .    .    .

    4. Fail to return pledged goods to a customer upon payment of the full amount due the pawnbroker on the pawn transaction....
    Section 1510(A) provides in pertinent part:
    (A) [N]o pawn finance charge calculated according to the actuarial method shall exceed an amount equal to twenty percent (20%) of the amount financed which does not exceed One Hundred Fifty Dollars ($150.00), financed for one (1) month; fifteen percent (15%) of that amount financed which is more than One Hundred Fifty Dollars ($150.00) but does not exceed Two Hundred Fifty Dollars ($250.00), financed for one (1) month; ten percent (10%) of that amount financed which is more than Two Hundred Fifty Dollars ($250.00), but does not exceed Five Hundred Dollars ($500.00), financed for one (1) month....

7. Section 1511(B) of the Act provides in pertinent part:

Unless the pledged goods are found to be stolen, mortgaged or otherwise pledged or encumbered, any pledged goods not redeemed within thirty (30) days following the last fixed maturity date may thereafter, at the option of the pawnbroker, be forfeited and become the property of the pawnbroker.

8. Section 108(b) provides in pertinent part:
    (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
    (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
    (2) 60 days after the order for relief.

9. For this contention Cash America relies upon *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.,* 855 F.2d 1054 (3rd Cir.1988); *In re Whispering Bay Campground, Inc.,* 850 F.2d 443 (8th Cir.1988); *Goldberg v. Tynan (In re Tynan),* 773 F.2d 177 (7th Cir.1985); *Johnson v. First Nat'l Bank,* 719 F.2d 270 (8th Cir.1983) *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

requirements of § 1325(a)(5)(B) of the Code, and that therefore it can not be confirmed.[10] It first cites §§ 1510(A) and (C) of the Act, which set the maximum interest rates allowable for pawn transactions, and contends that the present value of its claim should be computed using the statutory interest rates rather than the 10% per annum proposed under debtors' plan. Cash America next complains that debtors' plan contemplates the return of collateral to debtors prior to payment of Cash America's claim in full. It is argued that under the Act, a pawnbroker may perfect its liens only through possession, that it is permitted to have recourse only against the collateral pledged against the loan,[11] and that debtors' plan therefore does not provide for the retention by Cash America of its lien.

Cash America's final contention is that debtors' plan is contrary to Oklahoma law, since it proposes to grant to Cash America a recourse claim, which is not permitted by the Act, and that therefore the plan fails to meet the requirements of § 1325(a)(3) of the Code.[12]

On October 4, 1991, debtors filed their supplemental brief and disclosed that they had entered into an agreement with the manager of Cash America where debtors were allowed to redeem the items of the April 8, 1991, pawn ticket and agreed to redeem one item per month thereafter.

Debtors contend that courts have concluded that § 108(b) may be read consistently with § 362(a),[13] and that § 362(a) controls over § 108(b).[14] Debtors concede that Cash America is oversecured and that it is therefore entitled to the interest rates as provided in the pawn agreements, and that the 10 percent per annum proposed in their original plan was not adequate. Debtors further contend that they have amended their plan and now propose to pay Cash America in one immediate payment. Thus, it is argued that the remaining arguments of Cash America are moot.

Cash America filed a reply brief in which they object to confirmation of debtors' amended plan. Cash America asserts that

---

**10.** Section 1325(a)(5)(B) of the Code provides in pertinent part as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. . . .

**11.** Section 1502(8) of the Act is as follows:

8. "Pledged goods" means tangible personal property other than choses in action, securities of printed evidences of indebtedness, which property is deposited with or otherwise actually delivered into the possession of a pawnbroker in the course of his business in connection with a pawn transaction.

Section 1511(B) of the Act provides, in pertinent part, as follows:

B. Customer's Personal Liabilities Prohibited. Even though a pawn transaction subject to [the Act] creates a debtor-creditor relationship, no pawnbroker shall make any agreement requiring the personal liability of a customer in connection with a pawn transaction, and no customer shall have an obligation to

redeem pledged goods or make any payment on a pawn transaction. The only recourse of a pawnbroker where the customer has pledged goods shall be to the pledged goods themselves. . . .

**12.** Section 1325(a)(3) provides, in material part, as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . . .

(3) the plan has been proposed in good faith and not by any means forbidden by law. . . .

**13.** Section 362(a) provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition . . . operates as a stay, applicable to all entities, of—

. . . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . .

**14.** For this contention debtors rely upon *In re Jenkins,* 19 B.R. 105 (D.Colo.1982); *In re East Lansing 30 Assoc.,* 47 B.R. 593 (Bankr. W.D.Mich.1985); *In re St. Amant,* 41 B.R. 156 (Bankr.D.Conn.1984); *In re Bennett,* 29 B.R. 380 (W.D.Mich.1981); *In re Shea Realty, Inc.,* 21 B.R. 790 (Bankr.D.Vt.1982); and *Moratzka v. Lanesboro State Bank (In re Johnson),* 8 B.R. 371 (Bankr.Minn.1981).

its prior contentions are not rendered moot by debtors' amended plan. It reasserts that when collateral pledged to a pawnbroker is not redeemed within the time period as provided by State law, the collateral does not become property of the estate and may not be administered in a plan. It is also reasserted that if the time to redeem collateral has not expired as of the date of the petition, § 108(b) extends the redemption time for 60 days, and absent timely redemption, a plan may not modify liens affecting such property.

Cash America contends that other parties would object to debtors' amended plan based upon the preferential treatment provided to Cash America, since other creditors are paid over 3 years and Cash America is paid in full immediately. Cash America further contends that debtors' amended plan may not be feasible since the immediate payment proposed to be made to Cash America is approximately $800.

## RELATIONSHIP BETWEEN SECTION 108(b) AND SECTION 362(a)

Section 541 creates a bankruptcy estate upon the commencement of a case which includes all of a debtor's legal and equitable interests.[15] *See Jim Walter Homes, Inc. v. Spears (In re Thompson)*, 894 F.2d 1227, 1230 (10th Cir.1990). State law creates and determines the dimensions of a property right. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). When debtors filed their petition, any property rights accruing under the pawn transactions became property of debtors' estate. Thus, the collateral which had been pawned and any period of redemption was part of debtors' estate. The issue before the court is whether debtors' right of redemption in the pawned collateral has terminated and therefore no longer part of the bankruptcy estate.

Courts are divided as to whether a statutory redemption period is stayed by § 362(a).[16] In determining that a statutory redemption right is not stayed by § 362(a), some courts have found that the running of a statutory redemption right is not an "act" or "proceeding" within the meaning of § 362. *Goldberg v. Tynan, (In re Tynan)*, 773 F.2d 177 (7th Cir.1985); *In re Petersen*, 42 B.R. 39 (Bankr.D.Or.1984). Further, it has been held that if the automatic stay of § 362 were held to prevail over § 108(b), the effect would be to enlarge property rights granted and circumscribed by State law, thus rendering the pertinent time allotments of § 108 unnecessary. *Johnson v. First Nat'l Bank*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054 (3rd Cir.1988). Additionally, it is generally held that specific statutory references control over those which are general, and since § 108 specifically deals with redemption periods, it should control, with regard to such periods, over the more general provisions of § 362(a). *In re Farmer*, 81 B.R. 857, 861 (Bankr.E.D.Pa.1988). Thus, these courts have held that § 362(a) does not toll the running of the time period for redemption, and that the only available extension of time for such periods is the 60 days provided for in § 108(b). *Counties Contracting*, 855 F.2d at 1059; *Whispering Bay Campground Inc., v. Fagan (In re Whispering Bay Campground, Inc.)*, 850 F.2d 443, 446 (8th Cir.1988); *Heikkila v. Carver (In re Carver)*, 828 F.2d 463, 464 (8th Cir.1987); *Federal Land Bank v. Glenn (In re Glenn)*, 760 F.2d 1428, 1440 (6th Cir.) *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Tynan*, 773 F.2d 180; *Johnson*, 719 F.2d at 278.

In addressing a statutory right of redemption after a foreclosure, a leading bankruptcy authority agrees that the bankruptcy court may not extend or enlarge a redemption period provided by State law,

---

**15.** Section 541 provides in pertinent part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsection (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case.

**16.** *See* cases cited in footnotes 9 and 14, *supra*.

and, when the redemption period has not expired as of the petition date, § 108(b) provides for a minimum post-petition redemption period of 60 days. L. King, 4 *Collier on Bankruptcy* ¶ 541.07[3] at 541–32 (15th ed. 1991).

Even though determining that § 362(a) controls over § 108 with regard to post-petition redemption periods, some courts have found that a 60 day redemption period is inadequate to accomplish equal distribution of assets to creditors and to allow debtors time to propose a plan of repayment. *In re Amant,* 41 B.R. 156, 160–61 (Bankr.D.Conn.1984); *In re Shea Realty, Inc.,* 21 B.R. 790, 793 (Bankr.D.Vt.1982); *Moratzka v. Lanesboro State Bank (In re Johnson),* 8 B.R. 371, 374 (Bankr.D.Minn. 1980). In attempting to harmonize the relationship between § 108(b) and § 362(a), these courts have found that the 60 day extension in § 108 does not begin to run until the automatic stay of § 362(a) has been lifted. *Shea Realty,* 21 B.R. at 793; *In re H. & W. Enter., Inc.,* 19 B.R. 582 (Bankr.D.Iowa 1982).

Debtors rely upon *In re Jenkins,* 19 B.R. 105 (D.Colo.1982), for their contention that § 362(a) controls over § 108(b). Such reliance, however, is misplaced, since that court did not consider the applicability of § 108(b). In *Jenkins,* Judge Kane held that § 362(a) tolled the State redemption period to preserve "those property rights which I have found to be possessed by the debtor at the time of the filing." *Id.* at 110. Later, however, in *In re Westergaard v. Cucumber Creek Dev., Inc. (In re Cucumber Creek Dev., Inc.),* 33 B.R. 820 (D.Colo.1983), Judge Kane recognized that the effect of § 108(b) had not been considered in *Jenkins,* and, upon consideration of § 108(b), he held that redemption rights created by State law may only be preserved and extended to the extent allowed by

§ 108. *Id.* at 821. Judge Kane found that § 362(a) provides protection from "any act to obtain possession of property" and that the mere passage of time is not an "act" within the meaning of § 362(a). *Id.*

All of the courts of appeals, and the majority of district and bankruptcy courts which have addressed the applicability of § 108(b) and § 362(a) to statutory redemption rights have concluded that § 108(b) controls. *See Farmer,* 81 B.R. at 859. Based upon a review of the cases, it is this court's view that the better reasoned position is that the automatic stay provided by § 362(a) does not toll the running of statutory redemption periods, and that statutory redemption rights may only be extended as provided by § 108(b).

## CONCLUSION

█ Under the provisions of the Act cited above, the April 1, 1991, pawn ticket matured on May 1, 1991, and the redemption period expired on May 31, 1991. Since debtors' petition was filed on June 3, 1991, after the redemption period had expired, debtors no longer had a property interest in the collateral given to secure the April 1 loan when they filed their bankruptcy petition.[17] Therefore, neither the debt associated with the April 1, 1991, loan nor the property pledged to secure it may be administered or dealt with in debtors' Chapter 13 plan.

█ The April 8, 1991, pawn ticket matured on May 8, 1991, and the redemption period expired on June 7, 1991. Pursuant to § 108(b) of the Code, since debtors' petition was filed on June 3, 1991, debtors had 60 days from the date of the petition, until August 2, 1991, within which to redeem the collateral pledged on the April 8, 1991, pawn ticket. Since debtors failed to redeem the collateral within that period, they no longer have a property interest in the

---

**17.** As is noted above, § 1511(B) of the Act provides that pledged goods not redeemed within 30 days following the maturity date *may thereafter, at the option of the pawnbroker, be forfeited and become the property of the pawnbroker.* This language would appear to require some overt, affirmative act on the part of the pawnbroker. The record in this case does not indicate the performance of any such act by or on behalf of Cash America. Since, however, debtors appear to concede that forfeiture occurs in the event that the collateral is not redeemed or, a new pawn transaction agreed to, the court is not called upon to decide whether forfeiture in fact occurred and will not do so.

collateral. Thus, the debt associated with the April 8, 1991, pawn ticket may not be administered or otherwise dealt with through debtors' Chapter 13 plan.[18]

The May 18, 1991, pawn ticket would have matured on June 17, 1991. Just as was the case with the April 8, 1991, transaction, debtors had until August 2, 1991, within which to redeem the collateral. Since debtors failed to redeem the collateral within that period, they no longer have a property interest in the collateral, and the debt associated with the May 18, 1991, pawn ticket may not be administered or otherwise dealt with through debtors' Chapter 13 plan.

Based upon the foregoing, Cash America's objection to confirmation should be sustained. Debtors are granted ten (10) days from the date hereof to amend their plan, failing to do so, the case will be dismissed.[19]

IT IS SO ORDERED.

See also 133 B.R. 557.

---

**18.** According to debtors' response brief, debtors entered into an agreement with the manager of Cash America on September 7, 1991, and have redeemed the collateral.

**19.** Debtors amended their original plan in response to Cash America's objection. However, the amended plan provides for the administration of Cash America's claim. In Cash America's reply brief, it objects to debtors' amended plan, contending that the collateral is not property of debtors' estate. Based upon the discussion contained herein, Cash America's objection to debtors' amended plan will also be sustained.