**MARINE MIDLAND BUSINESS LOANS, INC., as successor in interest to U.S. Concord, Inc., Appellant,**

v.

**MIAMI TRUCOLOR OFFSET SERVICE CO., Appellee.**

**No. 96–6419–CIV–GOLD.**

United States District Court, S.D. Florida.

Feb. 26, 1998.

R. Hugh Lumpkin, Keith Mack Lewis Cohen & Lumpkin, Miami, FL, for Appellant.

Thomas Messana, Markowitz Davis Ringel, Miami, FL, for Appellee.

## ORDER AFFIRMING BANKRUPTCY COURT

GOLD, District Judge.

This is an appeal from a final. summary judgment of the Bankruptcy Court entered on Miami Trucolor's Verified Complaint for Declaratory and Injunctive Relief.

## I. FACTS

The facts of this case are largely undisputed as they arose from a stipulation between the parties.

**The underlying agreements.** On December 30, 1985, Miami Trucolor Offset Service Co., the debtor in this bankruptcy action, entered into a contract to lease computer-related equipment from Marine Midland[1]. Incident to this transaction, Melton, then the president of Miami Trucolor, executed a personal guaranty in favor of Marine Midland guaranteeing the performance of Miami Trucolor's obligations under the lease. Miami Trucolor subsequently defaulted on its lease obligations. Consequently, Marine Midland repossessed the leased equipment, sold it, and applied the sale proceeds of $381,000 to the amount due under the lease agreement. A deficiency balance remained, however, as proceeds from the sale were insufficient to fully compensate Marine Midland.

1. The agreement was actually between Miami Trucolor and U.S Concord, but U.S. Color subsequently merged with Marine Midland, leaving Marine Midland as the successor entity.

Nonetheless, Miami Trucolor later purchased additional equipment from Marine Midland. It executed a promissary note in the amount of $336,930, which covered the deficiency balance plus the sale price of the additional equipment purchased. As part of this transaction, Miami Trucolor executed a separate security agreement granting Marine Midland a security interest in certain property owned by Miami Trucolor. Melton executed another personal guaranty in favor of Marine Midland which guaranteed Miami Trucolor's performance of the obligations under the note and security agreement. Miami Trucolor defaulted on this agreement as well.

**The bankruptcy petition.** Miami Trucolor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in October, 1994. Marine Midland was scheduled as a creditor, holding a secured claim against the debtor's estate. In January, 1995, Marine Midland filed its Notice of Appearance and Request for Service of Papers. A month later, it a proof of claim in the secured amount of $170,000. Pursuant to Rule 2002(g) of the Federal Rules of Bankruptcy Procedure, after Notice of Appearance was filed, Miami Trucolor sent notice of all subsequent pleadings to Marine Midland and its counsel.

**The state court action.** Seeking to enforce Melton's obligations under the guaranties, Marine Midland filed an action in state court in April 1995. This state court action later became the subject of Miami Trucolor's Bankruptcy Court Complaint for Declaratory and Injunctive Relief from which this appeal is brought.

**First Plan of Reorganization and Disclosure Statement.** On May 2, 1995, in the bankruptcy action, Miami Trucolor filed its proposed Plan of Reorganization and Disclosure Statement. The Disclosure Statement provided a brief overview of the Plan including provisions relating to voting and confirmation, background of debtor, and pre-petition litigation. No specific references to the proceeding pending in state court against Melton were made in the disclosure statement. As is typical, the Plan contained provisions tracking the Disclosure Statement, including a summary, definitions, and a discussion of the treatment of claims and of discharge of claims. Section 9 contained a provision concerning releases. After the Plan of Reorganization and Disclosure Statement were filed, the Bankruptcy Court issued a comprehensive order setting forth the deadlines for the balance of the case, including deadlines for filing objections to the Disclosure Statement and objections to Confirmation of the Plan.

On June 28, 1995, the Bankruptcy Court held a hearing to consider approval of the Disclosure Statement and Confirmation of the Plan. One of the creditors, Simplicity Pattern Co., Inc., appeared at the hearing and objected to the Disclosure Statement on the ground that, among other things, the legal issues surrounding the release provision contained in Section 9.01 of the Proposed Plan of Reorganization were not adequately disclosed. The Bankruptcy Court directed Miami Trucolor to amend its Disclosure Statement to set forth in detail its basis for the Release Provision. Although it received notice, Marine Midland did not object to the Disclosure Statement or attend the June 28 hearing.

**The Amended Disclosure Statement and Plan of Reorganization.** On July 3, 1995, Miami Trucolor filed its Amended Disclosure Statement, including its Amended Plan of Reorganization. Section (I) III of the Amended Disclosure Statement provided in part, "THIS DISCLOSURE STATEMENT AND ITS EXHIBITS, INCLUDING THE PLAN, SHOULD BE READ IN THEIR ENTIRETY." (emphasis and capitalization in original). Also contained in the Amended Disclosure Statement was a Release Provision which provides as follows:

Among other things, the confirmation of the Plan discharges, releases, and otherwise renders as no further force or effect, any guarantees of collection, payment or performance, indemnity bonds or obligations, performance bonds, contingent liabilities arising out of the assignment of leases or contract obligations, or other similar undertakings made or given by the Debtor for guarantees of (1) collection, (2) payment or (3) performance, indemnity bonds or obligations, performance bonds,

contingent liabilities arising out of the assignment of leases or contract obligations, or other similar undertakings made or given by third parties on account of the Debtor prior to October 5, 1994, as to the obligations or performance of another or of any other Entity.

The Amended Disclosure Statement specifically identified Melton and explained the necessity for the Release Provision.

The Debtor is unaware of any such guarantees except those given by Donald Melton, Jacqueline Melton and P.M. Shafransky. Since the Debtor stands ready to make timely all payments and undertake all obligations under the Plan, the Debtor believes this provision is appropriate. Moreover, Mr. Melton is devoting his full energies to the reorganized Debtor, *see infra* at IV.F. The success of the Plan is, in no small part, dependent upon his undivided attention to these activities. To permit an individual creditor to divert his energies from those tasks will adversely affect the reorganized Debtor. Jacqueline Melton is deceased. Mr. Shafransky, for some time, has not been involved with the Debtor.

The Bankruptcy Court found that the Amended Disclosure Statement contained adequate information to permit Miami Trucolor to solicit votes. Marine Midland did not file any written objections to the Amended Plan nor did it attend the confirmation hearing.

On July 7, 1995, Miami Trucolor objected to Marine Midland's claim. Although it received notice, Marine Midland did not seek leave of court to have its claim allowed for the purpose of casting a ballot prior to August 6, 1995, the last day for submitting ballots accepting or rejecting the plan. On August 4, 1995, Marine Midland cast a ballot rejecting the Amended Plan. But Marine Midland had neither sought nor obtained a court order allowing its claim for voting purposes. Accordingly, the Bankruptcy Court declined to count that ballot.[2] On August 30, 1995, the Court entered an order confirming the Amended Plan of Reorganization. Despite proper notice, Marine Midland did not appeal the Confirmation Order.

**Preliminary Injunction.** On November 17, 1995, Miami Trucolor and Melton advised Marine Midland that its claim against Melton had been released and/or discharged by confirmation of the Amended Plan and requested Marine Midland to dismiss the state action. Marine Midland refused. Therefore, on November 20, 1995, Miami Trucolor filed a Motion for Preliminary Injunction in the Bankruptcy Court seeking to enjoin Marine Midland from prosecuting the state action. A hearing on the motion for preliminary injunction was held.[3] After the hearing, the

---

**2.** The Bankruptcy Court found that even if Marine Midland's ballot rejecting the Amended Plan had been counted, Miami Trucolor had obtained sufficient votes to confirm the plan.

**3.** At the preliminary injunction hearing, the Bankruptcy Court tried to narrow the issues. The following colloquy took place:

MARINE MIDLAND'S
COUNSEL: In all candor with the Court, in summarizing the argument, was Marine Midland sleeping on its rights thinking that it had the guarantee? To some degree that is possible. Was this in effect a waiver to create a res ajudicata or were we in some way snookered into failing to pursue and aggressively object to the [Release] [P]rovision of these plans? Probably. But the fact of the matter is—
COURT: Well, let me stop you there. Where would the snookering, if you would, come from, through non-disclosure, and if so, where is the non-disclosure?
MARINE MIDLAND'S
COUNSEL: No, sir. I was actively litigating the underlying guarantee case and have been continuing it and continuing it out of courtesy to both opposing counsel and the principal for a number of—at a number of requests.
COURT: But there is no non-disclosure by the debtor at any time during the Chapter 11 proceeding, is there?
MARINE MIDLAND'S
COUNSEL: No.
COURT: No false or misleading statements, what's there is there?
MARINE MIDLAND'S
COUNSEL: Yes, sir.
COURT: Okay. I just want to make sure the record's clear. Because I agree with the two of you that we need to frame these issues on the significant part. And that's why I want to ensure from both sides their input as to what they think any factual disputes are, so that I can resolve factual disputes and then deal with the law, which is the most significant or important part of this case.
MARINE MIDLAND'S
COUNSEL: *We do not factually dispute the adequacy of the notice or of the disclosure*

Bankruptcy Court granted the preliminary injunction.

Thereafter the parties filed cross motions for summary judgment with lengthy memoranda of law. The debtor argued that Section 9.01 of the Amended Plan released all personal guaranties issued by Melton in favor of Marine Midland and that the doctrine of *res judicata* barred Marine Midland from contesting the validity of the Release Provision. Marine Midland filed a cross motion for summary judgment requesting the Bankruptcy Court to strike Section 9.01 of the Plan on the grounds that the Bankruptcy Court lacked jurisdiction to release the obligations of non-debtor third parties and that Marine Midland was not precluded from proceeding in state court to enforce the guaranties. The Bankruptcy Court held a hearing in which it heard testimony from Melton and others. On March 29, 1996, it issued its Summary Judgment Order and Memorandum Opinion. In a comprehensive and well-reasoned opinion, the Bankruptcy Court concluded that on the undisputed facts, it was persuaded by controlling case law from the Supreme Court to find that the doctrine of *res judicata* applied to the confirmation order, thus Marine Midland was precluded from making a collateral attack on the Release Provision in state court. The Bankruptcy Court found that the facts of *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), were very similar to this case, because in *Stoll,* the Court upheld a similar confirmation order and determined that the creditors should be enjoined from pursuing a state court action.

## II. LEGAL ARGUMENT

On appeal, the appellant makes the same two basic arguments that it made before the Bankruptcy Court: (1) the Bankruptcy Court was without jurisdiction or power to approve the Release Provision, and (2) *res judicata* does not preclude the Bankruptcy Court from changing its prior order, nor does it require the Bankruptcy Court to enter an injunction prohibiting prosecution of the state action. This Court finds appellant's arguments unpersuasive in light of the two Supreme Court cases relied on by the Bankruptcy Court, and the Fifth Circuit case of *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987), also cited by the Bankruptcy Court.

**A. Subject Matter Jurisdiction.** Appellant begins its argument by stating the general rule that the protection afforded by Chapter 11 against the claims of creditors is available only to debtors. *See In Re A.J. Mackay Co.,* 50 B.R. 756, 761 (D.Utah 1985). Accordingly, a bankruptcy court ordinarily has no jurisdiction to adjudicate and release claims held by creditors against non-debtor guarantors, *e.g., In re Rohnert Park Auto Parts, Inc.,* 113 B.R. 610, 615 (9th Cir. BAP 1990); *In Re Market Square Inn, Inc.,* 163 B.R. 64 (Bankr.W.D.Pa.1994). This Court acknowledges the general rule. But, as stated in *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir.1987), "[a]lthough section 524 has generally been interpreted to preclude release of [non-debtor] guarantors by a bankruptcy court, the statute does not by it specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of a plan of reorganization." *Accord In Re North Ala. Anesthes. Group, P.C.,* 154 B.R. 752, 758 (N.D.Ala.1993) (there is no specific provision in Bankruptcy Code that precludes a bankruptcy court from releasing non-debtor guarantors). These courts have reasoned that assuming proper notice has been given, a creditor cannot object to a provision in a reorganization plan that has been confirmed by the bankruptcy court without objection and not directly appealed. *Republic Supply,* 815 F.2d at 1050; *In Re North Alabama,* 154 B.R. at 758.

**B. Res Judicata.** *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), one of two Supreme Court cases relied on by the Bankruptcy Court, involved a bankruptcy court's order which confirmed a bankruptcy plan that released a personal guaranty executed by a non-debtor. As in

*contained within the amended disclosure statement.* And as I said, with all candor, that responsibility is mine.

Tr. at 21–22.

this case, the creditor affected by the release, Gottlieb, failed to object to the plan or appeal the confirmation order. Gottlieb then initiated a state court action seeking to collect on the personal guaranty. He also petitioned the district court to modify the bankruptcy plan so that it would no longer discharge the non-debtor's guaranty. This petition to modify was denied.

In the state court action, the non-debtor guarantor argued that the district court orders confirming the bankruptcy plan and denying Gottlieb's petition to modify should be entitled to *res judicata* effect. The state trial court ruled that Gottlieb was entitled to collect on the personal guaranty, but the Supreme Court of the United States reversed. The Supreme Court held that, even if the district court wrongly decided that it had jurisdiction over the subject matter, the state court was barred by principles of *res judicata* from questioning the district court's decision. It held that a court by necessity has the authority to determine its own jurisdiction over the parties and subject matter, and does so either tacitly or expressly, by rendering a judgment. To allow a party to collaterally attack a court's jurisdiction is to allow retrial of issues already decided.

> After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the pleas of res judicata is made has not the power to inquire again into that jurisdictional fact. We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question of whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. In this case the order upon the petition to vacate the confirmation settled the contest over jurisdiction.

*Stoll,* 305 U.S. at 172, 59 S.Ct. at 137–38 (footnotes omitted).

Similarly, in *Chicot County Drainage Distr. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), the Supreme Court held that bondholders were bound by the district court's order approving a "plan of readjustment" notwithstanding that the statute on which the district court relied was subsequently declared unconstitutional. The district court, acting as a bankruptcy court, had entered an order canceling the debtor's bond obligations. The bondholders were given notice and had an opportunity to object to the provision in the plan affecting the bond cancellation. The order confirming the plan provided, in part, that bondholders who failed to present their bonds within one year were thereafter enjoined from asserting claims thereon.

After the statute upon which the district court acted was found unconstitutional, several bondholders brought suit claiming that cancellation of their bonds was void because the district court never had subject matter jurisdiction. The Supreme Court rejected that argument.

> As parties, these bondholders had full opportunity to present any objections to the proceeding, not only as to its regularity, or the fairness of the proposed plan of readjustment, or the propriety of the terms of the [confirmation order], but also as to the validity of the statute under which the proceeding was brought and the plan put into effect.... There was no attempt to review the [confirmation order]. If the general principles governing the defense of *res judicata* are applicable, those bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the [confirmation order] because they failed to raise it.

*Chicot County,* 308 U.S. at 375, 60 S.Ct. at 319.[4] *Accord Celotex Corp. v. Edwards,* 514 U.S. 300, 311–14, 115 S.Ct. 1493, 1501, 131 L.Ed.2d 403 (1995) (collateral attack on final order of bankruptcy court impermissible where creditor failed to challenge section 105(a) injunction in bankruptcy court or appeal order to district court).

Marine Midland, like Gottlieb in *Stoll v. Gottlieb,* and the bondholders in *Chicot County,* had notice of the confirmation pro-

---

4. The holding in *Chicot County* was recently reaffirmed by the Court in *Teague v. Lane,* 489 U.S. 288, 308–09, 109 S.Ct. 1060, 1074–75, 103 L.Ed.2d 334 (1989).

ceedings and a full opportunity to object to the Release Provision. Notwithstanding the objection of Simplicity, Marine Midland did not object to the Release Provision prior to confirmation and did not appeal the Confirmation Order. Thus, on the authority of *Stoll v. Gottlieb* and *Chicot County,* the Bankruptcy Court properly found that on the undisputed facts before it, the doctrine of *res judicata* applied to the Confirmation Order and, therefore, Marine Midland was precluded from making a collateral attack on the decision of the Bankruptcy Court through the state action.

Another case, though not controlling, is supportive of the appellee's position, *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987). Relying on *Stoll v. Gottlieb* and *Chicot County,* the Fifth Circuit, on facts virtually identical to those presented in this case, held that a bankruptcy court's confirmation order was entitled to *res judicata* effect where the creditor challenging the provision releasing third party, non-debtor guarantors failed to raise that objection prior to confirmation and did not appeal the confirmation order. On appeal from the bankruptcy court, the district court had rejected the guarantor, Mr. Shoaf's, defense of *res judicata.* According to the district court, the confirmed plan did not release Shoaf from liability on the guaranty because the bankruptcy court lacked authority, under the Bankruptcy Code, to release a third party, non-debtor guarantor. Rejecting the argument that the provision releasing third party, non-debtor guarantors was without effect because it exceeded the authority of the bankruptcy court, the Fifth Circuit reversed. It held that the action to enforce Shoaf s guaranty was an impermissible collateral attack on the confirmation order.

Although Section 524 has generally been interpreted to preclude release of guarantors by a bankruptcy court, the statute does not by specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral of a Plan of Reorganization. *Regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the Bankruptcy Court, it is nonetheless included in the Plan, which was con-*

*firmed by the Bankruptcy Court without objection and was not appealed.* Republic, in effect, is now seeking to appeal the confirmed Plan and asking us to review it on its merits. Questions of the propriety or legality of the Bankruptcy Court Confirmation Order are indeed properly addressable under direct appeal. Republic, however, is now foreclosed from that avenue of review because it chose not to pursue it.

(emphasis added). *Republic Supply,* 815 F.2d at 1050; *accord Bowen,* 174 B.R. at 847 ("The binding effect of a confirmed plan of reorganization is such that *res judicata* applies even when the plan contains provisions which are arguably contrary to applicable law."); *In re Sanders,* 81 B.R. 496, 499 (Bankr.W.D.Ark.1987) ("So long as a court is competent to preside over the matters at issue, even an erroneous determination as to the extent of the court's jurisdiction is *res judicata* and not subject to collateral attack.").

*Republic* is persuasive. This Court finds that the Bankruptcy Court did not err when it found that because Marine Midland failed to object to the Release Provision prior to confirmation and failed to appeal the Confirmation Order, Marine Midland's state action is an impermissible collateral attack on the Confirmation Order.

■ In this case, after a discussion of the controlling cases and *Republic,* the Bankruptcy Court assessed the case using a traditional *res judicata* analysis, applying the following elements: (1) parties must be identical; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved. *Richardson v. Alabama State Bd. of Educ.,* 935 F.2d 1240, 1244 (11th Cir.1991). As for the first element, the Bankruptcy Court noted that the identity of the parties element is satisfied where the creditor and guarantor were the same parties before the bankruptcy court. This element is satisfied not only by the identity of the "formal" or "paper" parties, but also of the real parties in interest. *Republic Supply,* 815 F.2d at 1051. Thus the

**348**

identity of parties element was met in this case where Marine Midland was the plaintiff in the state action an appeared in the bankruptcy case. Melton, a defendant in the state action, was also a formal party in the bankruptcy case. As for the second element, it cannot be disputed that the Confirmation Order was rendered by a court of competent jurisdiction. The parties do not dispute that the Confirmation Order is a final judgment on the merits, thus the third element was met. Finally, the Bankruptcy Court applied the transactional test set forth in the *Restatement (Second) of Torts,* section 24. Under this test, the question to be answered by the court is whether the cause of action asserted by Marine Midland arose out of the same transaction that was the subject of the Release Provision in the Amended Plan. As Marine Midland does not dispute that the guaranty at issue is the same in both actions, the Bankruptcy Court found that the last requirement had been met.

### III. CONCLUSION

This Court finds that the Bankruptcy Court properly found that under the facts of this case, the doctrine of *res judicata* applies to the Confirmation Order. For this reason, Marine Midland was precluded from making a collateral attack on the Bankruptcy Judge's decision by way of an action in state court. The injunction was properly issued. Two United States Supreme Court cases and a case from the Fifth Circuit address the very issues raised in this appeal, and squarely support the Bankruptcy Court's ruling. Accordingly, it is

**ORDERED AND ADJUDGED** that the order of the Bankruptcy Court is AFFIRMED.