**In re Elbert Allen YOUNG, Jr., Marie McKenzie Young, Debtors.**

**No. 00–13522–WSS–13.**

United States Bankruptcy Court,
S.D. Alabama.

March 8, 2001.

Herman D. Padgett, Mobile, AL, for Debtors.

Christopher Kern, Mobile, AL, Richard Wright, Mobile, AL, for Cash America International, Inc.

J.C. McAleer, III, Mobile, AL, Chapter 13 Trustee.

## ORDER

WILLIAM S. SHULMAN, Bankruptcy Judge.

The matter before the Court is a motion to enforce the automatic stay against Cash America International, Inc., filed by Elbert Allen Young, Jr. and Marie McKenzie Young, (hereinafter referred to as the "Debtors") on October 31, 2000. A hearing was held on December 12, 2000. Herman D. Padgett appeared on behalf of the Debtors, along with J.C. McAleer, III, Chapter 13 Trustee, and Christopher Kern, the attorney for Cash America International, Inc. (hereinafter referred to as "Cash America"). The Court has taken judicial notice of the bankruptcy schedules, plan, notice of first meeting of creditors, and the order of confirmation. The matter was submitted on written stipulation of facts and arguments of counsel along with evidence.

## FINDINGS OF FACT

The Debtors filed the present Chapter 13 case on September 6, 2000. On May 5, 2000, Debtor Marie McKenzie Young entered into a pawn transaction with Cash America wherein $300.00 was advanced to the Debtor by Cash America in exchange for the pledge of musical equipment consisting of a digital recording studio. This pawn transaction was documented by a written pawn ticket which was admitted as evidence.

To pay Cash America and other creditors, Debtors originally sought to fund their Chapter 13 plan with payments to the Chapter 13 Trustee in the amount of $238.00 a month for a period of sixty (60)

months. The Debtors' schedules listed Cash America as a secured creditor in the amount of $ 420.00 and proposed to pay Cash America through their plan 100% up to $ 420.00. The order confirming the plan was entered by this Court on November 3, 2000 and ordered the Debtors to pay the sum of $276.00 per month to the Chapter 13 Trustee. Cash America was included in the order confirming the plan as a secured creditor to be paid up to $420.00. The order of confirmation further provided in paragraph 4 that

"A holder of a secured claim shall retain the lien securing the claim, unless otherwise provided in the plan."

The pawn transaction entered into on May 5, 2000 had a maturity date of June 4, 2000. The pawn transaction was renewed by Marie Young on July 5, 2000. A second pawn ticket was issued on the same printed form as Exhibit "1", and had a new maturity date of August 4, 2000.

The parties have stipulated that the Debtors did not renew, redeem, or make payment on the renewed pawn transaction before its maturity of August 4, 2000, or at any time since the date of the transaction.

## ISSUE

Can an order confirming a Chapter 13 plan treating a pawn transaction as a secured claim bind the pawn broker when the redemption period has not expired as of the date of confirmation?

## CONCLUSIONS OF LAW

The motion filed by the Debtors seeks to enforce the automatic stay under 11 U.S.C. § 362(a) to prevent Cash America from selling the musical equipment which was pawned prior to filing their petition in Chapter 13. The memorandum of law submitted by Cash America asserts that the pawned goods of the Debtors are no

longer part of the Debtors' estate because they failed to redeem them, and that the automatic stay does not prevent Cash America from taking action against the property it holds in its possession.

The Alabama Pawn Shop Act provides that each pawn ticket must state the maturity date of the pawn transaction as well as the amount due and that "pledged goods not redeemed within thirty days following the maturity date shall be forfeited to the pawn broker and absolute right, title, and interest in and to the goods shall vest in the pawn broker." Ala.Code ( 1975), § 5–19A–3 (7); § 5–19A6. The pawn ticket in evidence sets forth a redemption date of sixty days, thirty days longer than the statutory redemption period. See Ala. Code, § 5–19A–10.

The parties agreed that the pawn transaction which was renewed on July 5, 2000 had a maturity date of August 4, 2000 and a contractual redemption date of October 4, 2000. The property has remained in possession of Cash America at all times relevant to this proceeding. Cash America argues that the Debtors no longer have any property interest in the collateral because they have failed to redeem it.

 Under § 541(a), an "estate is comprised of all of the following property, wherever located and by whomever held: (1) except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). At the time the Debtors filed Chapter 13 on September 6, 2000, the Debtors were within the redemption period set forth in the pawn ticket contract. Therefore, at the time they filed Chapter 13, the Debtors still held a right of redemption in the musical equipment, making it property of the estate under the Bankruptcy Code protected by the automatic stay. See *In re Jackson*, 133 B.R. 541 (Bankr.W.D.Okl.1991); 11 U.S.C. § 541(a), § 362(a)(3) and § 1306(a). Since the redemption period had not expired prior to bankruptcy, § 108(b) of the Code extended the redemption period sixty days after the date the petition was filed to November 6, 2000. 11 U.S.C. § 108(B).[1] See *In re Jackson*, 133 B.R. 541 (Bankr. W.D.Okl.1991); *In re Dunlap*, 158 B.R. 724 (M.D.Tenn.1993); *Cash America Pawn v. David Murph*, 209 B.R. 419 (E.D.Tex.1997).

 For a debtor to modify a pawn contract under § 1322, the Court must first determine whether the redemption period has expired. If a redemption period has expired prior to the filing of bankruptcy, then the contract may not be modified because this remedy applies only to property in which the estate retains an interest. Under those circumstances, neither the debtor nor the estate have a legal or equitable interest in the property as of the petition date because all title and interest in the goods have vested in the pawn broker upon the expiration of the redemption date. Ala.Code (1975) § 5–19A–6. " 'The debtor succeeds to no greater interest in an asset than that held by the

---

1. 11 U.S.C. § 108(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 60 days after the order for relief.

debtor at the time that the petition is filed.'" *In re Dunlap,* 158 B.R. at 727.

■ However, the facts in the instant case are different in that the redemption period had not expired as of the petition date. The cases cited in Cash America's brief are distinguished by another critical fact as well.[2] The Debtors' plan was confirmed prior to the expiration of the extended redemption period given by § 108(b) without any objection from Cash America. The Debtors scheduled Cash America as a secured creditor and Cash America has not made an issue of notice of the confirmation hearing. The plan offered to pay Cash America as a secured creditor up to $420.00 on their secured claim. The Court must determine whether an order confirming the plan and modifying the contract of Cash America is res judicata.

Under § 1322(b), a plan may "modify the rights of holders of secured claims, ...". 11 U.S.C. § 1322(b). § 1327 of the Bankruptcy Code states that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor". 11 U.S.C. § 101(10). A "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliqui-

dated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) right to an equitable remedy for breach or performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured". 11 U.S.C. § 101(5).

■ Cash America insists that because the pawn transaction is nonrecourse as to the Debtors, it has no debtor/creditor relationship.[3] It maintains that the relationship was simply a transfer of property subject to redemption within state law and contractual limitations. However, such a strained interpretation is misplaced.

The definition of a pawn transaction under the statute uses the word "loan". See Ala.Code § 5–19A–2. The statute further mandates that each pawn ticket contain the amount of cash advanced, the maturity date of the transaction, the "amount due" and the "monthly rate". See § § 5–19A–3(6), (7), (8). Further, a pawn broker is authorized to "receive a pawn shop charge in lieu of interest" and sets limits on interest rates. See § 5–19A7. A pawn broker is granted a "lien on the pledged goods pawned for the amount of the money advanced and the pawn shop charge owed". See § 5–19A10.

The pawn ticket introduced into evidence states that the debtor is giving a security interest in the described goods, sets forth an annual percentage rate of 240%, refers to the "credit" extended and

---

**2.** *In re Jackson,* 133 B.R. 541 (Bankr. W.D.Okla.1991) (Pawn broker objected to Chapter 13 plan prior to confirmation); In re Dunlap, 158 B.R. 724 (M.D.Tenn.1993) (the issue considered was whether a statutory pawn redemption period may be extended during a bankruptcy filing); *Cash America Pawn v. David Murph,* 209 B.R. 419 (E.D.Tex.

1997) (whether the automatic stay under 362(a) extended the redemption period beyond the sixty days as set forth in § 108(b)).

**3.** Ala.Code § 5–19A–6. "A pledgor shall have no obligation to redeem pledged goods or make any payment on a pawn transaction...."

even has a repayment schedule on the form.

While the pawn transaction may be non-recourse, it is clear that if the Debtors want to redeem the property, both parties contemplate the Debtors having to pay the amount advanced and all charges and interest. Black's Law Dictionary defines "contingent" as "possible but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain or questionable." A "contingent claim" is defined as "one which has not accrued and which is dependent upon some future event that may never happen." (Black's Law Dictionary, Sixth Edition, 1990). Even though the Debtors have no obligation to redeem the property or make a payment pursuant to the statute, the very fact that they may do so gives Cash America at least a contingent right to payment. Therefore, Cash America has a claim, and as such, is considered a creditor within the meaning of the Bankruptcy Code.

Section 1325(a)(5) of the Bankruptcy Code provides that a Chapter 13 plan shall be confirmed, "with respect to each allowed secured claim provided for by the plan," if:

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retains a lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1325(a)(5).

The Debtors treated Cash America as a secured creditor under their plan. In order for the bankruptcy court to confirm the Chapter 13 plan with respect to an allowed secured claim, one of the requirements of § 1325(a)(5) must be satisfied.

The case of *In re Westbrook*, 246 B.R. 412 (Bkrtcy.N.D.Ala.1999) dealt with the issue of res judicata concerning a secured creditor that had failed to object to a provision in a debtor's confirmed Chapter 13 plan. The plan had provided that the secured creditor would receive no post-confirmation interest on its claim. The debtor filed an objection when the secured creditor tried to recover the interest by amending its proof of claim.

In referring to the requirements of § 1325(a)(5), the court said that factually, § 1325(a)(5) may be satisfied from a debtor's proposed plan. Legally, § 1325(a)(5) may be satisfied if the doctrine of res judicata applies. The latter applies here.

■ The doctrine of res judicata not only bars a court from relitigating issues that have been litigated in a cause but also bars a court from litigating the issues that may have been litigated. Consequently, under res judicata, if a confirmation hearing has been held and a confirmation order entered, if no section 1325(a)(5) objection has been made, that order becomes binding as to any section 1325(a)(5) objection that could have been made. In this way, whether a debtor factually satisfies the requirements of section 1325(a)(5) or not, the requirements are satisfied for purposes of confirmation. In other words, if an objection to confirmation of a debtor's plan on section 1325(a)(5) grounds could have been raised and litigated prior to confirmation, whether those grounds were litigated or not, the confirmation order becomes conclusive as to those grounds.

In the case of *In re Justice Oaks II, Ltd.* the Eleventh Circuit set out the requirements that must be satisfied in order for

re-adjudication of a claim to be precluded. First, the prior judgment must have been entered by a court of competent jurisdiction. Second, there must have been a final judgment on the merits. Third, the parties involved must be the same. Fourth, the subsequent proceeding must involve the same cause of action or claim as was involved in the prior proceeding. *Justice Oaks II, Ltd.*, 898 F.2d 1544(11th Cir. 1990), cert. denied, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990).

All of the elements of res judicata are satisfied in this case. The bankruptcy court clearly had competent jurisdiction to enter the order confirming the plan. The order of confirmation constituted a final judgment on the merits. As stated in *Justice Oaks II, Ltd.*, "This issue has been settled for some time: a bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits." 898 F.2d at 1550. Cash America and the Debtors were parties in the confirmation of the plan. Cash America was named as a secured creditor and sent notice of the confirmation hearing but did not participate in the confirmation. Lastly, the determination of whether the automatic stay applies to the Debtor's property held by Cash America relates directly to the nature of Cash America's claim and their status as a creditor. This Court finds that the current action is the same as the claim or cause of action that could have been raised at confirmation.

The case of *In re Clark*, 172 B.R. 701 (Bankr.S.D.Ga.1994) applied the *Justice Oaks II, Ltd.* holding to a debtor's objection to a confirmation of a Chapter 13 plan. The debtor objected to the allowance of a deficiency claim as secured after the plan had been confirmed. The court held that "under section 1327(a), the order of confirmation fixes the rights of all parties and binds them to the terms of the plan". Just as creditors are bound by the treatment afforded their claims, the debtor is likewise bound by the same terms.

■ Upon confirmation, res judicata bars the assertion of "any cause of action or objection which was raised, or could have been raised, prior to confirmation. The only rights which may be asserted by a party after confirmation are those provided for in the plan." *In re Clark*, 172 B.R. 701 (Bankr.S.D.Ga.1994) (citations and footnotes omitted).

For whatever reason, Cash America chose not to object to the Debtors' plan, even though certain of its arguments, if made, may have been meritorious. See *In re Sanders*, 243 B.R. 326, 328 (Bankr. N.D.Ohio 2000). Bankruptcy Rule 3015(f) controls the filing of an objection to confirmation. The rule states as follows:

An objection to confirmation of a plan shall be filed and served on the debtor, the trustee, and any other entity designated by the court, and shall be transmitted to the United States Trustee, before confirmation of the plan. An objection to confirmation is governed by Rule 9014. If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

After having slept on their rights, Cash America cannot now complain about the treatment of its secured claim. The Debtors' plan and the notice of commencement of the case under Chapter 13 were sent to Cash America. The notice contains the following language in bold print:

Creditors: failure to file a timely written objection to the debtor's plan and appear on the date and at the time specified above may result in the plan's con-

firmation without an evidentiary hearing before the court and regardless of the effect on any creditor's claim. (emphasis added).

In this case, the confirmed plan has modified the contract of Cash America and will pay their secured claim 100% up to $420.00.

The case of *In re Lewis*, 137 F.3d 1280 (11th Cir.1998) dealt with issues of redemption, but is distinguished from the instant case. In *Lewis*, Chapter 13 debtors filed an adversary proceeding against a secured creditor that had repossessed the debtor's vehicle prior to the filing of bankruptcy. The court held that the Chapter 13 estate's statutory right of redemption in the vehicle was property of the estate under 11 U.S.C. § 541(a). However, the court held that where the debtors tendered the creditor only sixty-two cents on the dollar in return for the use of the automobile, the debtors' proposal failed to sufficiently indicate that the estate had chosen to exercise its right of redemption. *In re Lewis*, 137 F.3d 1280, 1285 (11th Cir.1998).

■ While *Lewis* is instructive, the facts of this case stand in contrast to those in the *Lewis* case. In *Lewis*, the debtors sought a turnover of the vehicle through an adversary proceeding; here, the debtors seek to enforce the automatic stay to prevent Cash America from selling the collateral. The collateral has remained in the possession of Cash America and the Debtors have not sought a turnover. The court in Lewis determined that the debtors lacked both title and possession of the vehicle. The debtors in this case still have legal title. The title in the collateral never vested in Cash America under § 5–19A–6 prior to confirmation and the resulting modified contract. Ala.Code (1975), § 5–19A–6. Further, the Debtors in this case are paying 100% of the se-

cured claim up to the sum of $ 420, not just 62%. Cash America failed to object to the proposed modification and is now bound by res judicata. " 'The binding effect of a confirmed plan of reorganization is such that res judicata applies even when the plan contains provisions which are arguably contrary to applicable law.' " *Marine Midland Business Loans, Inc. v. Miami Trucolor Offset Service, Co.*, 217 B.R. 341 (S.D.Fla.1998) quoting *In re Sanders*, 81 B.R. 496, 499 (Bankr. W.D.Ark.1987).

In conclusion, Cash America maintains that the traditional notions of debt adjustment under Chapter 13 have little applicability to pawn transactions. Cash America asserts that it is not a creditor and the automatic stay does not apply. What Cash America seeks to do is belatedly object to confirmation. Pursuant to 11 U.S.C. § 1327(a) this Court's order of confirmation is binding as to the claim of Cash America. The notice given to Cash America very clearly indicated that failure to timely object to the Debtors' plan may result in a confirmation regardless of the effect on its claim. This Court holds that Cash America has a secured claim of $ 420; that its contract with the Debtor has been modified by the order of confirmation; that Cash America is bound by 11 U.S.C. § 1327(a) and the doctrine of res judicata; and that the automatic stay extends to the collateral held by Cash America.

Therefore, it is ORDERED and ADJUDGED:

1. That the Debtors' motion to enforce the automatic stay against Cash America International, Inc. is GRANTED.

2. That Cash America has a secured claim of $420 and may file a proof of claim

for said amount within thirty (30) days of the date of this order.