# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-271

**AUBREY ALEXANDRA DENTON, ET AL.**

**VERSUS**

**ST. LANDRY BANK & TRUST COMPANY, ET AL.**

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. C-20196857
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

************

**SYLVIA R. COOKS**
**JUDGE**
************

Court composed of Sylvia R. Cooks, Billy Howard Ezell and Candyce G. Perret, Judges.

**AFFIRMED.**

**G. Andrew Veazey**
**Veazey Felder & Renegar**
**Post Office Box 80948**
**Lafayette, LA 70598-0948**
**(337) 234-5350**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Aubrey Alexandra Denton, et al.**

**Richard D. Moreno**
**Richard D. Moreno, LLC**
**P.O. Box 149**
**Lake Charles, LA 70602-0149**
**(337) 656-8654**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Aubrey Alexandra Denton, et al.**

**Peter F. Caviness**
**Falgoust and Caviness, LLP**
**505 South Court Street**
**P.O. Box 1450**
**Opelousas, LA  70571**
**(337) 942-5812**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**St. Landry Bank and Trust Company**

**W. Simmons Sandoz**
**Sandoz Law Office**
**P.O. Box 471**
**Opelousas, LA  70571**
**(337) 942-8956**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**St. Landry Bank and Trust Company**

**COOKS, Judge.**

Plaintiffs in this matter are the adult daughters of Aubrey "Butch" Edward Denton: Aubrey Alexandra Denton, Laura Rae Denton and Sara Denton Kelley (hereafter the Denton Sisters). Butch died on May 25, 2019. At issue in this appeal are the proceeds of a policy of life insurance Butch acquired from Northwestern Mutual Life Insurance Company (hereafter NW Mutual). The named beneficiaries of the life insurance policy were Butch's three daughters. That policy was numbered 13296904.

On July 31, 2003, Butch obtained a line of credit from defendant, St. Landry Bank and Trust Company. To secure that line of credit, Butch executed an "Assignment of Life Insurance Policy as Collateral," using the NW Mutual policy as collateral security. Under the terms of the assignment, St. Landry Bank acquired the sole right to collect from the insurer the net proceeds of the policy at the death of Butch or upon surrender of the policy to the insurer for the cash surrender value. The Assignment did provide that any balance of proceeds collected by St. Landry Bank in excess of the outstanding liabilities owed to it shall be paid back to the named beneficiaries.

On May 25, 2005, Butch converted the NW Mutual policy number 13296904 to NW Mutual policy number 17191586. NW Mutual notified St. Landry Bank of this change.

On July 23, 2007, in connection with a Promissory Note executed by Aubrey E. Denton, Ltd., APLC (hereafter Denton, APLC, which was Butch's law firm) in favor of St. Landry Bank, Denton, APLC executed a document titled "Assignment of Life Insurance Policy as Collateral" using the NW Mutual life insurance policy as security. This 2007 Assignment was made in the name of Aubrey E. Denton, Ltd., APLC and not Butch Denton individually. St. Landry Bank maintained Denton, APLC was nothing more than an "alter ego" of Butch Denton. On May 5,

2010, Butch Denton signed a personal "Guaranty" of the July 23, 2007 loan to Denton, APLC.

On August 9, 2012, Butch Denton filed a Voluntary Petition for Relief under Chapter 11 of the U.S. Bankruptcy Code. The petition admitted that Butch Denton was a co-debtor with his corporation and owed St. Landry Bank $355,669.72. St. Landry Bank filed a Proof of Claim in the proceedings, asserting a claim owed to it of $362,036.01.

On December 10, 2012, Butch Denton filed a Third Amended Combination Disclosure Statement and Plan. Notice of this filing was provided to St. Landry Bank. In that Statement, the claim of St. Landry Bank was listed and provided as follows:

> Class 5 – <u>Secured Claims of St. Landry Bank and Trust Co.</u> – The secured claim of this class shall be deemed satisfied in full by surrender of the policy of life insurance on the life of debtor and which policy is assigned to this creditor. The balance of this creditor's claim in the amount of $33,792.01 is unsecured and will be treated as a class 1 claim. This class is impaired.

St. Landry Bank notes the amount of the secured claim at that time was the value of the policy and the remainder of the debt was treated as an unsecured claim, for which St. Landry Bank was paid less than 1% of the said $33,791.01.

The Chapter 11 Plan was confirmed by the Bankruptcy Court on December 19, 2012, after which Butch Denton received a personal discharge. The Chapter 11 Plan became final and was not appealed by any party. The Denton sisters note that there is no evidence in the record that, subsequent to confirmation of the Chapter 11 Plan, NW Mutual Policy No. 17191586 was ever delivered or surrendered to St. Landry Bank.

Butch Denton died on May 25, 2019. Both St. Landry Bank and the Denton Sisters filed proofs of claim for the death benefits of Policy No. 17191586. On July

4

22, 2019, NW Mutual issued a check in the amount of $253,884.67 made payable jointly to St. Landry Bank and the Denton Sisters.

On November 24, 2019, the Denton Sisters filed a "Petition for Declaratory Judgment and Sums Due Under Life Insurance Policy." In their petition, the Denton Sisters sought a declaratory judgment that they, not St. Landry Bank, were entitled to the policy proceeds and sought judgment against NW Mutual for payment. The Denton sisters noted that on January 21, 2013, Butch Denton paid St. Landry Bank $3,661.80 as "Payment in Full" under the Chapter 11 Plan, and maintained this payment "released [Butch] from any further personal liability under the 2010 Guaranty." They further noted from the period of January 21, 2013, until Butch's death, Denton, APLC did not make any payments to St. Landry Bank nor acknowledge any debt to St. Landry Bank. No lawsuits were ever filed against Butch personally or Denton, APLC to surrender the NW Mutual policy. The Denton Sisters asserted that under La.Civ.Code art. 3498, actions on promissory notes are subject to a liberative prescription of five years, and since this period was not interrupted, suspended or extended during the period from January 21, 2103 through Butch's death, the 2010 Guaranty and/or the 2010 assignment are prescribed.

In response, St. Landry Bank filed a declinatory exception of lack of subject matter jurisdiction and a peremptory exception of res judicata and/or no cause of action. St. Landry Bank noted that under federal bankruptcy law, Butch Denton was released from any obligation to pay any additional money back to St. Landry Bank on the notes and St. Landry Bank was stayed from enforcing the notes. This stay, it argued, would interrupt the five-year liberative prescription period. It further maintained, if the Denton Sisters' arguments were accepted it would allow the succession of Butch Denton to walk away with hundreds of thousands of dollars loaned to him without any necessity to pay it back.

A hearing on the exceptions was held on January 21, 2020. After arguments from the parties, the trial court granted the Exception of Res Judicata, held the declinatory exceptions of lack of subject matter jurisdiction moot and dismissed the Denton Sisters' Petition for Declaratory Judgment with prejudice.

The Denton Sisters timely appealed the trial court's judgment, asserting the following assignments of error:

1. The trial court erred by sustaining St. Landry Bank's Peremptory Exception of Res Judicata based on a Confirmed Chapter 11 Plan.

2. The trial court erred by dismissing Plaintiffs' Petition with prejudice without an opportunity to seek to amend their Petition.

**ANALYSIS**

In their first assignment of error, the Denton Sisters argue the trial court erred in granting St. Landry Bank's Peremptory Exception of Res Judicata based on the confirmed Chapter 11 Plan prepared and filed by Butch Denton.[1] The record establishes Butch Denton's Chapter 11 Plan was confirmed by the Bankruptcy Court by order dated December 19, 2012. The Third Amended Plan specifically noted the secured claim of St. Landry Bank (held by virtue of the assignment of the NW Mutual policy as collateral for Butch's outstanding liabilities) was "deemed satisfied in full by the surrender of the policy of life insurance on the life of [Butch] Denton and which policy is assigned to St. Landry Bank." The Plan also stated St. Landry Bank's secured claim would be deemed satisfied in full by the surrender of the policy, which would occur at either Butch Denton's death or by St. Landry Bank choosing to collect the cash surrender value of the policy prior to death. St. Landry Bank notes this Plan was prepared by and filed with the Bankruptcy Court by Butch Denton, who was an attorney. Therefore, it is clear Butch Denton intended in his Plan to satisfy the secured debt to St. Landry Bank.

---

[1] We note in their appeal, the Denton Sisters do not re-urge their lower court argument that the 2010 Guaranty and Assignment are prescribed due to five years liberative prescription.

The assignment specifically provided that St. Landry Bank has "the sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity." As St. Landry Bank points out, this essentially made it the beneficiary and/or owner of the NW Mutual policy with the "sole right" to collect the net proceeds of the policy upon death, or if it instead chose, to collect the cash surrender value of the policy prior to Butch's death, regardless of any prior beneficiary designation. St. Landry Bank chose the option to collect the death proceeds. The assignment did also provide that any proceeds of the policy in excess of the amount of liabilities owed to St. Landry Bank would then go to the designated beneficiaries. This, St. Landry Bank notes, is a reason for the Denton Sisters to remain designated beneficiaries on the policy. The Chapter 11 Plan and the Bankruptcy Court, through its December 19, 2012 Order conforming the Plan, recognized the validity of the assignments.

As both parties note, a confirmed bankruptcy plan has the effect of a judgment rendered by a district court. *See Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.*, 95-654, 95-671 (La. 1/16/96), 666 So.2d 624. When a state court is tasked with determining the preclusive effect of a federal court judgment, the federal law of res judicata must be applied. *Reeder v. Succession of Palmer*, 623 So.2d 1268 (La.1993). In *Green v. Iberia Parish School Board*, 06-1060, p. 3 (La.App. 3 Cir. 12/20/06), 945 So.2d 940, 943, *writ denied*, 07-111 (La. 3/16/07), 952 So.2d 697, this court, set forth the requirements for barring a subsequent suit on res judicata grounds:

> As explained in *Terrebonne Fuel & Lube*, 666 So.2d at 633, federal res judicata law indicates that a judgment bars a subsequent suit if the following requirements are satisfied: "1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases."

7

As St. Landry Bank notes, this four-part test has been applied repeatedly in the bankruptcy context of an order confirming a plan. *Eubanks v. FDIC*, 977 F.2d 166 (5th Cir.1992); *Howe v. Vaughn*, 913 F.2d 1138 (5th Cir.1990); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987).

The Denton Sisters argue that res judicata does not apply in this case because the parties to the lawsuit are different as those in the bankruptcy proceedings. Specifically, they maintain the fact that the Denton Sisters were not involved in the bankruptcy proceedings does not allow for res judicata effect to apply in this case. We disagree.

As St. Landry Bank notes, the law is clear that it is not necessary that the parties to the bankruptcy proceedings be identical to the parties in the instant lawsuit. The law is clear that "[c]laim preclusion will . . . apply to bar a subsequent action on res judicata principles where parties *or their privies* have previously litigated the same claim to a valid final judgment." *Reeder*, 623 So.2d at 1271 (emphasis ours). In *Eubanks*, 977 F.2d at 170, the federal appeals court noted that "where the non-party's interests were adequately represented by a party to a prior action, we have concluded that there is sufficient identity between the parties to apply the principals of res judicata and give preclusive effect to the judgment." The *Eubanks* court also noted a non-party "is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative." *Id.* In *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870 (5th Cir.1984), the federal court held a "final judgment is *res judicata* not only between parties to the earlier lawsuit, but also their privies."

Butch Denton purchased the NW Mutual policy and named his daughters as beneficiaries. Following that, Butch and his law firm obtained loans from St. Landry Bank and executed assignments of the NW Mutual policy to St. Landry Bank as collateral for the loans. Butch was fully aware these assignments provided that St.

Landry Bank had the right to collect the proceeds of the policy at death or upon maturity, regardless of the prior designation of his daughters as beneficiaries. Similarly, Butch was aware of the effect of the assignments as to his daughters' interests as named beneficiaries when he prepared and then filed the Chapter 11 Plan in Bankruptcy Court. We agree with St. Landry Bank that the interests of Butch and his daughters were so "closely aligned," that the Denton Sisters were adequately represented in Bankruptcy Court by Butch. The Denton Sisters claims derive exclusively from Butch, and we find no merit in their contention that privity did not exist between the parties. Moreover, Butch had the sole legal authority to name assignees and/or beneficiaries on the policy.

The second prong for the test for res judicata, i.e., that the prior judgment was rendered by a court of competent jurisdiction standard for is obviously met. Likewise, the third prong, that the judgment of the prior court is final, was met as the Order of the Bankruptcy Court was never appealed.

The Denton Sisters also argue the fourth prong of the test for res judicata, i.e., that the same cause of action is at issue in both the prior and current case, was not met herein. The supreme court in *Reeder*, 623 So.2d at 1271-72, addressed this prong of the res judicata analysis:

> The clear trend, however, in the most recent decisions, in harmony with such procedural concepts as the "transaction or occurrence" test for compulsory counterclaims as stated in Federal Rules of Civil Procedure, Rule 13(a) and the "common nucleus of operative fact" standard . . . has been towards the adoption of § 24 of the Restatement 2d, of Judgments. That Section sets forth a "transactional analysis" as to what constitutes a "claim," the extinguishment of which prohibits subsequent litigation with respect to the transaction(s) from which it arose. A majority of the federal circuit courts, as well as the Claims Court, have thus far expressly adopted the Restatement's transactional approach.

The U. S. Fifth Circuit, in *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir.2005), *cert. denied*, 547 U.S. 1055, 126 S.Ct. 1662 (2006) (citations, internal quotations, and parentheticals omitted), discussed the proper test

used by federal courts in determining whether two suits involve the same cause of action when it stated:

> In order to determine whether both suits involve the same cause of action, this Court uses the transactional test. Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. What grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations or business understanding or usage. If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. The critical issue is whether the two actions are based on the same nucleus of operative facts.

In the present case, the Denton Sisters claim they are entitled to a declaratory judgment that they, and not St. Landry Bank, are entitled to the proceeds of the NW Mutual policy. That claim is based upon the "same nucleus of operative facts" as the Bankruptcy proceedings giving rise to the Chapter 11 Plan filed by Butch Denton in the Bankruptcy Court, the indebtedness of Butch to St. Landry Bank and the assignments of the NW Mutual policy to St. Landry Bank. Therefore, we find all four prongs of the res judicata test have been met.

The Denton Sisters also argue the Chapter 11 Plan was a new contract, or novation, between Butch Denton and St. Landry Bank. They further maintain this new contract displaced the earlier assignments, and that the terms of the assignment for the "new contract" are ambiguous. We disagree and find the Chapter 11 Plan clearly provides that the parties are not extinguishing the original obligation owed by Butch Denton to St. Landry Bank, but are acknowledging said obligation. St. Landry Bank also notes that under La.Civ.Code art. 1881, "if any substantial part of the original performance is still owed, there is no novation. . . . Mere modification of an obligation, made without intent to extinguish it, does not effect a novation. The execution of a new writing, the issuance or renewal of a negotiable instrument,

or the giving of securities for the performance of an existing obligation are examples of such a modification." Nothing in the Chapter 11 Plan manifests an intention to extinguish the existing obligation of Butch Denton to St. Landry Bank. Thus, the Chapter 11 Plan cannot be a novation as argued by the Denton Sisters.

In their second assignment of error, the Denton Sisters assert the trial court erred in dismissing their petition with prejudice without granting leave to amend the petition. A trial court is vested with discretion when deciding whether to allow amendment of the petition after it sustains a peremptory exception. *Broussard v. F.A. Richard & Assocs., Inc.*, 99-10 (La.App. 3 Cir. 5/5/99), 740 So.2d 156, *writ denied*, 99-1048 (La. 6/4/99), 744 So.2d 625. The right to amend a petition is qualified by the restriction that the objections to the petition be curable. "[L]eave to amend is not required when it would constitute a 'vain and useless act.'" *Id.* at 160.

The Denton Sisters allege they have made a showing with the previous arguments advanced in their first assignment of error, such that they should be granted "leave to amend their petition to more fully allege the grounds of their claims to demonstrate their claims are not barred by the Chapter 11 Plan." We disagree, and for the reasons previously set forth, find the objections raised by St. Landry Bank in its peremptory exception of res judicata are not curable and amendment of the petition would be a "vain and useless act." The terms of the Chapter 11 Plan, which Butch Denton drafted, will not change, nor will the terms of the assignments. The trial court did not err in failing to grant the Denton Sisters leave to amend their petition.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Plaintiffs-Appellants.

**AFFIRMED.**